# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH,<br>1717 Massachusetts Avenue, N.W., 600<br>Washington, DC  20036-2002<br><br>                Plaintiff,<br>    v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY and STEPHEN L.<br>JOHNSON, Administrator,<br>United States Environmental Protection Agency,<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460<br><br>                Defendants. | )  Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      This action is brought under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* ("the Act") and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA").  Plaintiff Friends of the Earth ("Friends") seeks to compel Defendants, the United States Environmental Protection Agency and Stephen L. Johnson, Administrator of the U.S. Environmental Protection Agency (collectively "EPA"), to carry out their nondiscretionary duty to promulgate regulations containing standards applicable to emissions from Category 3 marine diesel engines — those used to propel large ocean-going vessels — as required by section 213(a) of the Act,  42 U.S.C. § 7547(a).

2.      As described below, the deadline for promulgation of  regulations containing standards applicable to such emissions was November 1992.  Some 15 years after that deadline,

however, EPA has still failed to act and these heavy-duty polluters are still not adequately

regulated.  Domestically-registered ships are only minimally regulated by EPA, and EPA has

failed to impose any emissions standards on foreign-flagged vessels operating within U.S.

territorial waters.

## JURISDICTION

3.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (action arising

under the laws of the United States) and section 304(a) of the Act, 42 U.S.C. § 7604(a) (citizen

suit provision).

4.      Section 304(b)(a) of the Act requires that written notice of intent to bring suit

under the Act must be provided to the Administrator of EPA 60 days prior to commencement of

such an action.  42 U.S.C. § 7604(b)(2).  On June 13, 2007, plaintiff notified the Administrator

by certified mail of plaintiff's intent to sue to compel EPA's compliance with section 304(a)(2)

of the Act.  A copy of this written notice is attached hereto as Exhibit 1.  The letter was received

by the Administrator on June 18, 2007.  Thus the 60-day notice period expired on August 17,

2007.

## VENUE

5.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e) because

Defendant EPA has its principle office here, a substantial part of the events or omissions giving

rise to the claim occurred here, and plaintiff Friends of the Earth has its headquarters here.

## PARTIES

6.      Plaintiff FRIENDS OF THE EARTH:

a.      Plaintiff Friends of the Earth is a public interest, not-for-profit advocacy

organization with its headquarters in Washington D.C.  Friends' mission is to defend the

environment and champion a just and healthy world.  Friends is the U. S. voice of the world's

largest network of environmental groups with affiliates in 70 countries.  The Bluewater Team

(formerly Bluewater Network) of Friends of the Earth works to stop environmental damage from

vehicles and vessels, and to protect human health and the planet by reducing dependence on

fossil fuels.

      b.     Many members of Friends live and work in coastal areas where emissions

from large marine vessels degrade air quality and compromise public health and safety.  As such,

they have suffered and are suffering injury not only to their own health but also to the health of

others in their families and communities.  Moreover, many members of Friends enjoy

recreational, scientific, cultural, inspirational, educational, and conservation activities in these

areas, such as camping, hiking, fishing, boating, swimming, photography, aesthetic enjoyment

and nature study.  These activities, and these members' overall enjoyment of these coastal areas,

are hampered by poor air quality, reduced visibility and damage to ecosystems, caused in part by

unregulated emissions from large marine vessels.

      c.     To protect its members' interests in coastal air quality, plaintiff has been

working to reduce air pollution from large marine vessels for nearly 10 years.  Plaintiff's

involvement in the issue dates back to 1999 when it first petitioned, and later sued, the EPA

under the Clean Air Act to regulate emissions from large marine engines.  More recently, Friends

has engaged in a number of international, national, state and local initiatives to reduce the

growing volume of emissions from ships.

      d.     Since 2005, Friends has lead a delegation to the International Maritime

Organization to participate in negotiations on international air pollution standards for ships.

Friends also publishes technical papers and generates media coverage of the urgent need to

reduce smokestack pollution from large marine vessels.  On numerous occasions over the last

several years, Friends has authored extensive comments to both the International Maritime

Organization and the EPA, urging the adoption of more stringent international regulations to reduce emissions of oxides of nitrogen and various other pollutants, including sulfur oxides, hydrocarbons, particulate matter, carbon monoxide, airborne toxics and greenhouse gases, from the world shipping fleet.

       e.     In 2000, Bluewater Network (now the Bluewater Team of Friends of the Earth) published "A Stacked Deck: Air Pollution from Large Ships," one of the first reports by a non-profit organization to address emissions from large marine vessels. This report revealed that large ocean-going vessels are one of the world's largest and fastest growing sources of emissions of several air pollutants. In 2001, Bluewater Network co-sponsored a two-day "Conference on Marine Vessels and Air Quality." Over 200 participants from around the world, representing federal, state and local air quality regulators, environmental groups and the maritime industry, attended this event. The conference provided a unique opportunity for these diverse stakeholders to focus on national and international air quality concerns related to commercial marine transportation.

       f.     EPA's failure to promulgate regulations containing standards applicable to emissions from Category 3 marine diesel engines and foreign-flagged vessels has resulted and is resulting in continuing emissions from these engines containing high levels of, among other things, carbon monoxide, nitrogen oxide and particulate matter, all of which contribute to Plaintiff's members' asthma and other respiratory health problems, thus causing harm and injury to Plaintiff's members who reside near ports. In addition, EPA's failure to promulgate regulations containing standards applicable to emissions from Category 3 marine diesel engines and foreign-flagged vessels has resulted and is resulting in continuing poor air quality, reduced visibility, and damage to ecosystems, all of which harm Plaintiff's members' recreational, scientific, cultural, inspirational, educational, and conservation interests in coastal areas.

g.      Plaintiff's and its members' interests in clean air and in having the environmental laws of the nation fully implemented have been, are being, and unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by EPA's continuing failure to promulgate regulations containing standards applicable to emissions from Category 3 marine diesel engines.

h.      The injuries described above are actual, concrete injuries suffered by Plaintiff and its members.  These injuries are caused by the actions and omissions of EPA, as described herein.  The injuries of plaintiff and its members would be redressed by the relief sought herein.  Plaintiff has no adequate remedy at law.

7.      Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is a federal agency charged by the Act with protecting and enhancing the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population.  *See* 42 U.S.C. § 7401(b).  EPA is required by section 213(a) of the Act, 42 U.S.C. § 7547(a), to promulgate regulations setting standards applicable to emissions from nonroad vehicles, including Category 3 marine diesel engines.

8.      Defendant STEPHEN L. JOHNSON is the Administrator of the U.S. Environmental Protection Agency, and is sued in his official capacity.  Mr. Johnson is ultimately responsible for insuring that EPA complies with and fully implements the Act in accord with Congress's intentions.

## BACKGROUND

### Emissions from Category 3 Marine Diesel Engines

9.      Category 3 marine diesel engines — defined by EPA as "those marine diesel engines with a displacement at or above 30 liters per cylinder," 64 Fed. Reg. 73300, 73305-06 (December 29, 1999) — are used primarily for propulsion power on large ocean-going vessels

5

such as container ships, tankers, bulk carriers and cruise ships, and are among the largest engines in the world.

10.     These engines burn residual fuel oil, a byproduct of refining crude oil into higher-grade products, which has substantially higher ash, sulfur, and nitrogen content than other fuels. The emissions from these engines contribute significantly to national ozone, carbon monoxide (CO), nitrogen oxide (NOx), and particulate matter (PM) levels, especially near commercial ports such as Seattle, Oakland, Los Angeles and New York.

11.     Such high levels of pollution have serious impacts on environmental and public health.  NOx is a precursor to the formation of both ground-level ozone (smog) and fine particulate matter pollution.  Smog causes harmful respiratory effects including but not limited to chest pain, coughing, shortness of breath, decreased lung function, inflammation of the lung tissue and aggravation of existing respiratory diseases, and may impair the body's immune system.  Children and the elderly are most severely affected by these health effects.

12.     Exposure to diesel PM and other pollution from marine diesel engines can also lead to aggravation of respiratory and cardiovascular disease, increased asthma, coughing, wheezing, difficulty breathing, chronic bronchitis, decreased lung function, increased allergenicity and premature death.

13.     In addition to public health and welfare concerns, emissions from large marine diesel engines also harm the environment by degrading visibility, contributing to haze, acid rain, and eutrophication of water bodies, and by reducing crop yields and productivity of forest ecosystems.  Particulate matter also causes soiling and erosion damage to culturally important objects, promotes and accelerates the corrosion of metals, degrades paints, and deteriorates building materials.

**Statutory Context**

14.    Prior to 1990, the Clean Air Act did not regulate emissions from nonroad engines and vehicles such as locomotives, tractors, and marine vessels.  To remedy this, Congress enacted, as part of the 1990 Clean Air Act amendments, section 213 (42 U.S.C. § 7547) ("Nonroad Engines and Vehicles"), which requires EPA to reduce emissions from most types of nonroad engines, including marine engines.

15.    In section 213(a)(1), Congress directed the Administrator of EPA to study nonroad engine emissions "to determine if such emissions cause, or significantly contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare."   42 U.S.C. § 7547(a)(1).  The study was to be completed "within 12 months of November 15, 1990," *i.e.*, by November 15, 1991.  *Id.*

16.    Section 213(a)(2) required the Administrator to determine "within 12 months after completion of the study under paragraph (1) [*i.e.*, by no later than November 15, 1992], based upon the results of such study," whether emissions of carbon monoxide, oxides of nitrogen, and volatile organic compounds from nonroad engines, including marine diesel engines, "are significant contributors to ozone or carbon monoxide concentrations" in areas that do not meet federal air quality standards ("nonattainment areas").  42 U.S.C.  § 7547(a)(2).

17.    Finally, section 213(a)(3) required the Administrator, if s/he made an affirmative determination under section 213(a)(2), to "promulgate . . . regulations containing standards applicable to emissions from those classes or categories of new nonroad engines and new nonroad vehicles . . . which in the Administrator's judgment cause, or contribute to, such air pollution." 42 U.S.C. § 7547(a)(3).  The regulations were to be promulgated "within 12 months after completion of the study under paragraph (1)," *i.e.*, by no later than November 15, 1992.  42 U.S.C. § 7547(a)(3).

**History of EPA's Marine Diesel Engine Emissions Rule**

18.    EPA completed the study required by section 213(a)(1) of the Act in November

1991.  U.S. Environmental Protection Agency, *Nonroad Engine and Vehicle Emission Study—*

*Report* (1991).

19.    In June 1994, a year and a half past the statutory deadline, EPA made the

determination required by section 213(a)(2) of the Act that emissions of carbon monoxide,

oxides of nitrogen, and volatile organic compounds from, among other sources, Category 3

marine diesel engines are "significant contributors" to ozone and carbon monoxide

concentrations in nonattainment areas.  59 Fed. Reg. 31306, 31307 (June 17, 1994).

20.    In December 1999, seven years after the statutory deadline, EPA promulgated

regulations setting standards applicable to emissions from smaller marine diesel engines, but

explicitly excluded Category 3 engines and all engines on foreign-flagged vessels.  64 Fed. Reg.

73300 (Dec. 29, 1999).

21.    In February 2000, Bluewater Network (at that time a Project within Earth Island

Institute but now the Bluewater Team of Friends of the Earth), challenged this rule and EPA's

failure to promulgate regulations containing standards applicable to emissions of NOx from

Category 3 marine engines.  *Bluewater Network v. EPA*, No. 00-1065 (D.C. Cir., petition for

review filed February 24, 2000).  The case was settled when EPA agreed to publish, by January

31, 2003, a final rule under section 213(a)(3) containing NOx emission standards for new

Category 3 marine diesel engines, and to consider whether Category 3 engines installed on

foreign-flagged vessels should also be subject to such emission standards while in U.S. territorial

waters.

22.    EPA published the new rule on February 28, 2003, more than ten years after the

statutory deadline.  68 Fed. Reg. 9746 (Feb. 28, 2003) (the "2003 Rule").  The 2003 Rule

adopted a "two-tier" approach for setting emissions standards for Category 3 marine diesel engines. "Tier 1" standards codified NOx emissions standards set forth by the International Marine Organization in Annex VI to the International Convention on the Prevention of Pollution from Ships, as Modified by the Protocol of 1978 Relating Thereto (MARPOL Annex VI). However, EPA postponed the setting of more stringent and comprehensive "Tier 2" standards for NOx, SOx, diesel PM, and other pollutants to a future rulemaking, which EPA committed to complete no later than April 27, 2007. EPA also committed to consider in that future rulemaking the application of the new Tier 2 standards to Category 3 engines on foreign-flagged vessels in U.S. waters. EPA's commitment to take action by April 27, 2007 was codified at 40 C.F.R. § 94.8(a)(2)(ii).

23.     On April 23, 2003, Bluewater Network petitioned the D.C. Circuit Court of Appeals for review of the 2003 Rule, claiming that EPA had violated sec. 213(a)(3) of the Act and had acted arbitrarily and capriciously in failing to adopt meaningful emission standards for new Category 3 marine diesel engines and in failing to regulate emissions from engines on foreign-flagged vessels. *See Bluewater Network v. EPA,* 372 F.3d 404 (D.C. Cir. 2004). Without reaching the merits of Bluewater Network's arguments, the court upheld the 2003 Rule, relying in part upon EPA's commitment to publish a new final rule for Category 3 marine engines by April 27, 2007. *Id.*

24.     EPA failed to promulgate a new final rule for Category 3 marine engines on April 27, 2007. Instead, on that date EPA issued a proposed rule purporting to extend the deadline for issuing the required emissions standards until December 17, 2009. 72 Fed. Reg. 20977 (April 27, 2007).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of Clean Air Act Section 213(a)(3)

25.     Plaintiff re-alleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

26.     As alleged above, section 213(a)(3) of the Clean Air Act requires that the Administrator "shall . . .  promulgate . . . regulations containing standards applicable to emissions from those classes or categories of new nonroad engines and new nonroad vehicles . . . which in the Administrator's judgment cause, or contribute to, such air pollution." 42 U.S.C. § 7547(a)(3).  The regulations were to be promulgated by no later than November 15, 1992. EPA's failure to meet this nondiscretionary deadline violated and continues to violate section 213(a)(3) of the Act,  42 U.S.C. § 7547(a)(3).

27.     Alternatively, EPA's commitment in the 2003 Rule, as codified at 40 C.F.R. § 94.8(a)(2)(ii), created a mandatory deadline of April 27, 2007, by which EPA must promulgate regulations containing standards applicable to emissions from new Category 3 marine diesel engines as required by section 213(a)(3).  EPA's failure to meet this nondiscretionary deadline violated and continues to violate section 213(a)(3) of the Act, 42 U.S.C. § 7547(a)(3), and 40 C.F.R. § 94.8(a)(2)(ii).

### SECOND CLAIM FOR RELIEF
### Violation of Administrative Procedure Act

28.     Plaintiff re-alleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

29.     Defendant EPA's failure to promulgate regulations containing standards applicable to emissions from Category 3 marine diesel engines as required by section 213(a) of the Clean Air Act, is a nondiscretionary agency action unlawfully withheld.  5 U.S.C. § 706(1).

Defendant's continuing failure to promulgate such regulations is arbitrary, capricious, an abuse of discretion, and not in accordance with law, contrary to the APA, 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.    Declare that EPA is in violation of its nondiscretionary duty, pursuant to section 213(a)(3) of the Act, 42 U.S.C. § 7547(a)(3), to promulgate regulations containing standards applicable to emissions from new Category 3 marine diesel engines, including engines on foreign-flagged vessels that enter United States ports, by November 15, 1992.

B.    Alternatively, declare that EPA is in violation of its nondiscretionary duty, pursuant to section 213(a)(3) of the Act, 42 U.S.C. § 7547(a)(3), and its commitment in the 2003 Rule, as codified at 40 C.F.R. § 94.8(a)(2)(ii), to promulgate regulations containing standards applicable to emissions from new Category 3 marine diesel engines, including engines on foreign-flagged vessels that enter United States ports, by April 27, 2007.

C.    Enjoin EPA from further delaying compliance with its nondiscretionary duty to promulgate regulations containing standards applicable to emissions from new Category 3 marine diesel engines, including engines on foreign-flagged vessels that enter United States ports, by extending the regulatory deadline to December 17, 2009 or otherwise.

D.    Direct EPA within 30 days after entry of this Court's judgment to promulgate proposed regulations containing standards applicable to emissions from new Category 3 marine diesel engines, including engines on foreign-flagged vessels that enter United States ports, and to publish final regulations no later than 60 days thereafter.

E.    Award plaintiff its costs of litigation, including reasonable attorney and expert witness fees, pursuant to 42 U.S.C. § 7604(d).

F.    Grant plaintiff such further and additional relief as the Court may deem just and

proper.

Respectfully submitted,

DATED: September 4, 2007

*Michael R. Sherwood*

MICHAEL R. SHERWOOD, *Pro Hac Vice Applicant*
SARAH H. BURT, *Pro Hac Vice Applicant*
Earthjustice
426 17th Street, 6th Floor
Oakland, CA 94612
Tel: (510) 550-6700
Fax: (510) 550-6740

DATED: September 5, 2007

JAMES S. PEW (D.C./Bar 448830)
Earthjustice
1625 Massachusetts Ave., N.W., Suite 702
Washington, DC 20036-2212
Tel: (202) 667-4500
Fax: (202) 667-2356

Attorneys for Plaintiff Friends of the Earth

# EXHIBIT 1
## 60-DAY NOTICE LETTER



**EARTHJUSTICE**
*Because the earth needs a good lawyer*

BOZEMAN, MONTANA   DENVER, COLORADO   HONOLULU, HAWAI'I
INTERNATIONAL   JUNEAU, ALASKA   OAKLAND, CALIFORNIA
SEATTLE, WASHINGTON   TALLAHASSEE, FLORIDA   WASHINGTON, D.C.

June 13, 2007

**Via Certified Mail**

Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Re: Notice of Intent to File Clean Air Act Citizen Suit

Dear Administrator Johnson:

Earthjustice submits this letter on behalf of Friends of the Earth, to notify you, pursuant to section 304(b) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7604(b), that they intend to sue the U.S. Environmental Protection Agency ("EPA") to address its failure to perform non-discretionary actions as mandated by Congress in section 213(a)(3) of the Clean Air Act. 42 U.S.C. § 7547(a)(3). Specifically, EPA has failed to meet the mandatory deadline for promulgation of regulations setting standards for emissions from Category 3 marine diesel engines.[1]

I. Emissions from Category 3 Marine Diesel Engines

Category 3 marine diesel engines are used primarily for propulsion power on large ocean going vessels ("OGVs") such as container ships, tankers, bulk carriers, and cruise ships, and are some of the largest engines in the world. *See* 68 Fed. Reg. at 9747. The engines burn residual fuel oil – a byproduct of refining crude oil into higher-grade products – which tends to have higher ash, sulfur, and nitrogen content than other fuels. *See id.* at 9767. The emissions from these engines contribute significantly to national ozone, carbon monoxide, nitrogen oxide (NOx) and particulate matter (PM) levels, especially near commercial ports like New Orleans, LA, and along coastal areas like Santa Barbara and Los Angeles, CA. *See id.* at 9751.

The engines on OGVs are one of the largest anthropogenic sources of air pollution in the world, yet remain one of the last major sources of air pollution to be adequately controlled. Global annual emissions from OGVs for the year 2002 were 5,000,000 metric tons of NOx, 4,720,000 metric tons of $SO_x$, and 176,000,000 metric tons of $CO_2$.[2] *See* Friends of the Earth International, "New Global and Regional Inventories of Air Pollution from International Shipping," submitted to the International Maritime Organization subcommittee on Bulk Liquids

---

[1] Category 3 marine diesel engines are marine compression-ignition engines with per cylinder displacement at or above 30 liters. *See* 68 Fed. Reg. at 9747.

[2] Following the Supreme Court decision in *Massachusetts v. EPA*, ___ U.S. ___, 127 S. Ct. 1438 (2007), EPA has little choice but to set standards for $CO_2$ emissions from marine diesel engines.

426 17TH STREET, 6TH FLOOR   OAKLAND, CA 94612
T: 510.550.6700   F: 510.550.6740   E: eajus@earthjustice.org   W: www.earthjustice.org

100% RECYCLED · 100% POST CONSUMER WASTE · PROCESSED CHLORINE FREE

Stephen L. Johnson
June 13, 2007
Page 2 of 6

and Gases (Jan. 12, 2007)("FOEI Inventory Report"). It is estimated that emissions from OGVs represent at least 18-30% of the world's NOx emissions,[3] and emissions are growing significantly as marine transportation increases.[4] EPA estimates that by 2030, OGVs will account for, at a minimum, 28% of the country's mobile source NOx emissions, 20% of direct PM emissions, and 83% of SOx emissions.[5]

Recent inventories of ship emissions conducted for public agencies including U.S. EPA found that, under "business as usual" scenarios, energy used by ships bringing global trade to and from North America will double from 2002 levels by or before 2020; some scenarios predict doubling before 2015.[6] As new engines are built to accommodate this rapid growth, urgent action is needed on the part of EPA to set stringent standards for controlling the emissions from this source at the earliest possible date.

## II. Environmental, public health, and environmental justice impacts

The environmental and public health impacts from such high levels of pollution are undeniable. NOx is a precursor to the formation of both ground-level ozone, or smog, and fine particulate matter pollution. Smog causes harmful respiratory effects including but not limited to chest pain, coughing, shortness of breath, decreased lung function, inflammation of the lung tissue, aggravation of existing respiratory diseases, and may impair the body's immune system. *See* 68 Fed. Reg. at 9751. Children and the elderly are most severely affected by these health effects. *Id.* Exposure to smog leads to increased hospital admissions and emergency room visits and increases the use of medications. *Id.*

Particulate matter and diesel exhaust from marine diesel engines are of particular concern to public health. Exposure to fine particles such as those emitted by marine diesel engines can lead to aggravation of respiratory and cardiovascular disease, increased asthma, coughing, wheezing, difficulty breathing, chronic bronchitis, decreased lung function, increased allergenicity, and premature death. *Id.* at 9752. Diesel exhaust itself is considered toxic and carcinogenic, as the chemical components include several hazardous air pollutants or air toxics. *Id.* at 9753. Particulate matter also causes soiling and erosion damage to materials, including culturally important objects, promotes and accelerates the corrosion of metals, degrades paints, and deteriorates building materials. *Id.* at 9752.

---

[3] Corbett, J.J., and Koehler, H. 2003. Updated Emissions from Ocean Shipping. Journal of Geophysical Research, Vol. 108 (as cited in the United States' proposal entitled "Development of Standards for NOx, PM, and SOx" submitted to the International Maritime Organization subcommittee on Bulk Liquids and Gases, Feb. 9, 2007)("U.S. NOx, PM, and SOx Standards Proposal").

[4] The FOEI Inventory Report estimates that emissions will increase at a rate of 4.1% per year through 2040. FOEI Inventory Report at 3.

[5] *Id.*

[6] North American Emissions Inventory, "Tasks 3 and 4: Forecast Inventories for 2010 and 2020, Final Report" (8 December 2006), at p.vii.

Stephen L. Johnson
June 13, 2007
Page 3 of 6

In addition to health and welfare concerns, emissions from large marine diesel engines also harm the environment by degrading visibility, contributing to haze, acid rain, eutrophication, and nitrophication, and reducing crop yields and productivity of forest ecosystems. *Id* at 9751, 9753.

Approximately 70% of global shipping emissions occur within 400 kilometers of shore, making them significant sources of air pollution in coastal areas where a majority of the world's population live.[7]  Furthermore, studies have shown that emissions from marine diesel engines can substantially contribute to pollution from 400 to 1,200 kilometers inland and that transport of secondary products such as ozone and fine aerosol particles can travel thousands of kilometers in the atmosphere.[8]

While the impacts from marine diesel emissions can affect all people, those facing the challenges of poverty, poor access to medical care, very low rates of insurance coverage, and virtual exclusion from public policy decisions that most impact them, are most likely to live and work near pollution sources such as ports, transportation corridors, freeways, and industrial centers.[9]  Environmental justice communities often suffer from disproportionately high cancer, disease, and death rates as they are exposed to the highest levels of carcinogenic, toxic, and hazardous chemicals.[10]

### III. EPA's Marine Diesel Rule creates a mandatory deadline for EPA action

Section 213 of the Clean Air Act Amendments of 1990 requires EPA to reduce emissions from most types of nonroad engines, including marine engines.  Congress directed EPA to study nonroad engine emissions and to regulate pollutants, including NOx, that "are significant contributors to ozone or carbon monoxide concentrations" in areas that do not meet federal air quality standards ("nonattainment areas"). 42 U.S.C. § 7547(a)(1)-(3).  EPA completed the required study in 1991, made a finding of the "significance" of NOx emissions in 1994, Docket A-92-28, No. II-A-01 (Nov. 1991), and has since engaged in multiple rulemakings setting standards for nonroad engines.

One source of nonroad engine emissions that EPA studied was Category 3 marine diesel engines, which are "very large high-power engines that are used almost exclusively for propulsion on vessels engaged in international trade." 64 Fed. Reg. at 73306.  EPA acknowledged that Category 3 engines "generate NOx...emissions that contribute to [air pollution] levels above the National Ambient Air Quality Standards." 68 Fed. Reg. at 9751.

---

[7] Friends of the Earth International, "Air Pollution from Shipping Emissions – Environmental Justice: Public Health and Community Impacts," submitted to the International Maritime Organization's Marine Environment Protection Committee, May 12, 2005 ("FOEI Environmental Justice Report")

[8] *Id.*

[9] *Id.*

[10] *Id.*

Stephen L. Johnson
June 13, 2007
Page 4 of 6

EPA has also found that these engines "are a considerable source" of NOx, and that controlling their emissions "may yield important reductions in national NOx...inventories." Notice of Proposed Rulemaking, 63 Fed. Reg. 68508, 68510 (Dec. 11, 1998).

Once EPA has made an affirmative determination that a source is a significant contributor to ozone concentrations, section 213(a)(3) requires that the Administrator "shall... promulgate...regulations containing standards applicable to emissions from those classes or categories of new nonroad engines and new nonroad vehicles...which in the Administrator's judgment cause, or contribute to, such [ozone] pollution." 42 U.S.C. § 7547(a)(3). In setting emissions standards for such engines, Congress mandated that EPA "shall achieve the greatest degree of emission reduction achievable through the application of technology" with appropriate consideration given to cost, noise, energy, and safety concerns. *Id.* Because EPA has determined that emissions from Category 3 marine diesel engines significantly contribute to air pollution, including ozone, in nonattainment areas, EPA is required to promulgate emissions standards "*within 12 months after the completion of the study under [section 213(a)(1)].*" *Id.* (emphasis added). Because EPA completed its study in November 1991, the deadline for promulgating standards was November 1992. *Id.*

On February 28, 2003, well after the statutory deadline, EPA published a final rule on the Control of Emissions from New Marine Compression-Ignition Engines at or Above 30 Liters per Cylinder. *See* 68 Fed. Reg. 9746 ("2003 Final Rule").[11] The Final 2003 Final Rule provided a two-step approach for setting emissions standards for Category 3 marine diesel engines under the CAA. The first step was to codify emissions standards set forth by the International Marine Organization (IMO) in Annex VI to the International Convention on the Prevention of Pollution from Ships, as Modified by the Protocol of 1978 Relating Thereto (MARPOL 73/78). The second step committed EPA to take final action on appropriate standards for marine diesel engines "on or before April 27, 2007." 68 Fed. Reg. 9783. This commitment was codified at 40 C.F.R.§ 94.8(a)(2)(ii).

On April 23, 2003, Bluewater Network (now a division of Friends of the Earth), petitioned the D.C. Circuit Court of Appeals for review of EPA's 2003 Final Rule, claiming that EPA acted arbitrarily and capriciously in failing to adopt meaningful emission standards for marine diesel engines and that the agency violated section 213(a)(3) of the CAA by failing to regulate emissions from engines on foreign-flagged vessels. Without reaching the merits of Bluewater Network's arguments, the court upheld the 2003 Final Rule, relying in part upon

---

[11] Prior to the 2003 Final Rule, EPA had issued a Final Rule for Category 3 marine diesel engines in December 1999. However, in February 2000, Bluewater Network (now Friends of the Earth) challenged the 1999 Final Rule on the grounds that EPA did not have the authority to ignore section 213 of the Clean Air Act in favor of a voluntary emission control program. *See Bluewater Network v. EPA*, No. 00-1065 (D.C. Cir. July 19, 2004). The case resulted in a settlement agreement, pursuant to which EPA agreed to issue a final rule regulating Category 3 marine diesel emissions no later than January 31, 2003.

Stephen L. Johnson
June 13, 2007
Page 5 of 6

EPA's commitment to publish a final rule for Category 3 marine engines by April 27, 2007. *Bluewater Network v. EPA,* 372 F.3d 404 (D.C. Cir. 2004).

The 2003 Final Rule, approved by the D.C. Circuit in *Bluewater Network v. EPA,* creates a mandatory deadline by which EPA must promulgate regulations containing standards applicable to emissions from Category 3 marine diesel engines. *See Sierra Club v. Leavitt,* 355 F.Supp.2d 544, 549-50 (D.D.C. 2005) ("the regulation designates a subsequent mandatory date by which the Administrator's action must be finalized"). In *Sierra Club v. Leavitt,* the Court held that a regulatory deadline created in the course of meeting the statutory deadline is nondiscretionary. The Court further explained that when a regulation imposes a requirement that the Administrator must act by a certain date and specifies what action must be taken, the intent of the regulation is to impose a nondiscretionary duty on the Administrator. *Id.* at 549. Thus the April 27, 2007 deadline set in the 2003 Final Rule is a nondiscretionary deadline. However, April 27, 2007 has passed and EPA has failed to issue final standards for Category 3 engines.[12]

## IV. Citizen Suit Enforcement under CAA section 304

Section 304(a)(2) of the Act provides that "any person may commence a civil action on his own behalf against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). In *Sierra Club,* the court held that when a regulation designates a mandatory date by which the Administrator's action must be finalized, "the plain language of the regulation imposes a nondiscretionary duty on the Administrator to either affirmatively act or decide that no action was needed." 355 F.Supp.2d at 550. Moreover, the court held that the phrase "under this chapter" in section 304(a)(2) of the Act "includes not only statutory duties but also duties created by regulations promulgated pursuant to the Clean Air Act." *Id.* at 556. Therefore, because it is a nondiscretionary duty, a mandatory rulemaking deadline is enforceable through citizen suits under section 304 of the Clean Air Act. *See Sierra Club,* 355 F.Supp.2d at 553-57.

Section 304(b) of the Clean Air Act requires that notice of intent to bring suit under section 304(a)(2) must be provided to the Administrator 60 days prior to commencement of such an action. 42 U.S.C. § 7604(b)(2). As described above, EPA has declined to issue a final rule containing standards applicable to emissions from Category 3 marine diesel engines by April 27, 2007 – the mandatory deadline set in the 2003 Final Rule. Accordingly, unless this failure to set standards for Category 3 marine diesel engines is mitigated, we anticipate filing suit in the U.S. District Court for the District of Columbia sixty days after your receipt of this letter. Please feel

---

[12] Instead of issuing final standards for Category 3 engines, on April 27, 2007 EPA issued a direct final rule and parallel proposal to change the deadline for rulemaking to address the control of emissions from Category 3 marine diesel engines. 72 Fed. Reg. 20948. The direct final rulemaking must be withdrawn because significant adverse comments were submitted on the parallel proposal.

Stephen L. Johnson
June 13, 2007
Page 6 of 6

free to contact Michael Sherwood or Sarah Burt at the address and telephone number provided
above to further discuss the basis for these claims, or to explore possible options for resolving
these claims short of litigation.

Sincerely,

MICHAEL R. SHERWOOD
SARAH BURT
Attorneys for Friends of the Earth

cc:  Teri Shore, Friends of the Earth

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

FRIENDS OF THE EARTH

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

James S. Pew, Earthjustice, 1625 Mass. Ave. NW,
Ste. 702
Washington, DC  20036
(202) 667-4500 (Cont'd on separate sheet)

## DEFENDANTS

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY (Cont'd on separate sheet)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**◉ C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**    OR    **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Violation of Sec. 213(a)(3) of Clean Air Act (standards applicable to emissions from large marine engines)

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ [_____]  Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  9/5/2007    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**CIVIL COVER SHEET**
**(Continuation Page)**

I.(a) DEFENDANTS (Cont'd)

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L.
JOHNSON, Administrator, United States Environmental Protection Agency

I.(c) ATTORNEYS (Cont'd)

Michael R. Sherwood
Sarah H. Burt
Earthjustice
426 17th Street, 5th Floor
Oakland, CA 94612
(510) 550-6725