**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FRIENDS OF THE EARTH,<br>1717 Massachusetts Avenue, N.W., 600<br>Washington, DC  20036-2002 | ) ) ) ) | |
|         Plaintiff, | ) ) | Civ. No. 07-1572 (RMC) |
|   v. | ) ) | (Consolidated with 07-1744 and 07-2319) |
| UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY and STEPHEN L.<br>JOHNSON, Administrator,<br>United States Environmental Protection Agency,<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460 | ) ) ) ) ) ) ) ) ) ) | Judge Rosemary M. Collyer |
|         Defendants. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND .......................................................................................................3

I.     Factual Background ......................................................................................3

II.    Statutory Context ........................................................................................6

III.   History of EPA's Marine Diesel Engine Emissions Rule....................................7

STANDARD OF REVIEW ........................................................................................9

ARGUMENT ............................................................................................................11

I.     Plaintiff Has Stated a Claim Upon Which Relief Can Be Granted..................................11

II.    This Court Has Jurisdiction Under Section 304 of the Clean Air Act..............................14

III.   The Administrative Procedure Act Provides an Alternative Basis for Plaintiff's Claims .......................................................................................17

CONCLUSION..........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Biodiversity Legal Foundation v. Norton*, 285 F.Supp.2d 1 (D.D.C. 2003)..................................17

*Bluewater Network v. EPA*, 372 F.3d 404 (D.C. Cir. 2004)......................................................9, 13

*Bluewater Network v. EPA*, No. 00-1065 (D.C. Cir., petition for review filed
February 24, 2000).............................................................................................................2, 8

*Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)......................................................................17

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ...................................................................10

*Conservation Law Foundation v. Busey*, 79 F.3d 1250 (1st Cir. 1996) .......................................17

*Doe v. U.S. Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) ...........................................10

*Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55 (D.D.C. 2004) ........................................15

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) ...............................................................................10

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249
(D.C. Cir. 2005) ...............................................................................................................10

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ..........................................10

*Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97 (D.D.C. 2007)...................................10

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993)..........................................................................................................10

*Maine v. Thomas*, 874 F.2d 883 (1st Cir. 1989) ..........................................................................15

*NRDC v. EPA*, 902 F.2d 962 (D.C. Cir. 1990) ...........................................................................18

*Sierra Club v. Johnson*, 444 F. Supp. 2d 46 (D.D.C. 2006) ........................................................15

*Sierra Club v. Leavitt*, 355 F. Supp. 2d 544 (D.D.C. 2005) ........................................2, 11, 12, 15

*Sierra Club v. Ruckelshaus*, 602 F. Supp. 892 (N.D. Cal. 1984)................................................15

*Smith v. U.S.*, 518 F. Supp. 2d 139 (D.D.C. 2007) ......................................................................10

*Utah Power & Light Co. v. EPA*, 553 F.2d 215 (D.C. Cir. 1977) ................................................16

**STATUTES**

5 U.S.C. § 706(1) .................................................................................................18

42 U.S.C. § 4604(a)(2) .........................................................................................12

42 U.S.C. § 7547 ...................................................................................................1

42 U.S.C. § 7547(a) ...............................................................................................1

42 U.S.C. § 7547(a)(1) ...........................................................................................6

42 U.S.C. § 7547(a)(2) ...........................................................................................6

42 U.S.C. § 7547(a)(3) .......................................................................................6, 7

42 U.S.C. § 7604 ..................................................................................................14

42 U.S.C. § 7604(a) .......................................................................................11, 14

42 U.S.C. § 7604(a)(2) ...........................................................................................3

42 U.S.C. § 7607(b)(1) ...................................................................................15, 17

42 U.S.C. § 7607(d)(1)(R) ...................................................................................18

**RULES & REGULATIONS**

40 C.F.R. § 94.8(a)(2)(ii) ............................................................................. passim

Fed. R. Civ. P. 12(b)(6)....................................................................................9, 10

**FEDERAL REGISTER NOTICES**

59 Fed. Reg. 31306 (June 17, 1994) ......................................................................7

64 Fed. Reg. 73300 (Dec. 29, 1999) ......................................................................7

68 Fed. Reg. 9746 (Feb. 28, 2003) ............................................................... passim

71 Fed. Reg. 61144 (October 17, 2006).................................................................5

72 Fed. Reg. 20948 (April 27, 2007) ......................................................................9

72 Fed. Reg. 20977 (April 27, 2007) ......................................................................9

72 Fed. Reg. 33694 (June 19, 2007) ......................................................................9

72 Fed. Reg. 68518 (Dec. 5, 2007) ............................................................................9, 16

72 Fed. Reg. 69522 (Dec. 7, 2007) ..............................................................................4, 5

Plaintiff Friends of the Earth files this memorandum in opposition to Defendants' Motion For Judgment on the Pleadings and Motion to Dismiss, filed on January 22, 2008 (Doc. 19) (hereinafter "EPA Mot. to Dismiss"), by Defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, United States Environmental Protection Agency (collectively "EPA").  Plaintiff Friends of the Earth seeks to compel EPA to carry out its nondiscretionary duty to promulgate regulations by April 27, 2007 containing adequate standards applicable to emissions from Category 3 marine diesel engines as required by section 213(a) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7547(a), and by 40 C.F.R. § 94.8(a)(2)(ii). Defendants seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c) against Friends of the Earth in this case and against Plaintiff South Coast Air Quality Management District in consolidated case No. 07-1744, and dismissal under Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim) and 12(b)(1) (lack of subject matter jurisdiction) against Plaintiff Santa Barbara County Air Pollution Control District in consolidated case No. 07-2319, arguing that EPA has satisfied its statutory duty and that this court lacks jurisdiction to review Plaintiffs' claims.

## INTRODUCTION

Section 213 of the Clean Air Act, enacted as part of the Clean Air Act Amendments of 1990, sets a clear and aggressive schedule according to which EPA must complete various studies and ultimately promulgate emissions standards applicable to nonroad engines, including marine diesel engines, no later than November 15, 1992.  42 U.S.C. § 7547.  More than 15 years later, EPA has still not completed promulgation of emission standards for the largest and most polluting marine diesel engines – the so-called Category 3 marine diesel engines – meeting the requirements of section 213.

Friends of the Earth (then Bluewater Network) first sued EPA for failure to set emissions standards for Category 3 marine diesel engines in 2000. *Bluewater Network v. EPA*, No. 00-1065 (D.C. Cir., petition for review filed February 24, 2000). The case was settled when EPA agreed to publish, by January 31, 2003, a final rule under section 213(a)(3) containing nitrogen oxide ("NOx") emission standards for new Category 3 marine diesel engines and inviting public comment on whether Category 3 engines installed on foreign-flagged vessels should also be subject to such emission standards while in U.S. territorial waters.

EPA published a rule on February 28, 2003, adopting a "two-tier" approach to meeting the requirements of section 213(a)(3). 68 Fed. Reg. 9746 (Feb. 28, 2003) ("Control of Emissions From New Marine Compression-Ignition Engines At Or Above 30 Liters Per Cylinder") (2003 Rule). While the interim Tier 1 standards would be effective immediately, EPA postponed setting more stringent and comprehensive Tier 2 standards for NOx, sulfur oxides ("SOx"), diesel particulate matter ("PM"), and other pollutants to a future rulemaking, which EPA committed to complete no later than April 27, 2007. *Id.* EPA also committed to consider in that future rulemaking the application of the forthcoming Tier 2 standards to Category 3 engines on foreign-flagged vessels in U.S. waters.

However, the April 27, 2007 deadline passed and EPA failed both to promulgate the required Tier 2 standards and to consider application of the section 213 standards to foreign-flagged vessels.

EPA's 2003 Rule affirming that, as codified at 40 C.F.R. § 94.8(a)(2)(ii), "EPA will promulgate final Tier 2 standards for Category 3 engines on or before April 27, 2007," constitutes a nondiscretionary duty under the Clean Air Act. *Sierra Club v. Leavitt,* 355 F.Supp.2d 544 (D.D.C. 2005). Because EPA has yet to promulgate final Tier 2 standards or to consider the applicability of such standards to foreign-flagged vessels in U.S. waters, EPA has

failed to perform a nondiscretionary duty, and Friends of the Earth has properly brought this claim in this Court under section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2), to compel it to do so.

## BACKGROUND

### I.    Factual Background

Category 3 marine diesel engines – defined by EPA as "having per-cylinder displacement at or above 30 liters," 2003 Rule, 68 Fed. Reg. at 9758 – are used primarily for propulsion power on large ocean-going vessels such as container ships, tankers, bulk carriers, and cruise ships, and are among the largest engines in the world.  These engines generally burn residual fuel oil, a very low-grade petroleum-based fuel that is the byproduct of refining crude oil into higher-grade products and that has substantially higher ash, sulfur, and nitrogen content than other fuels.  *See* EPA, "Final Regulatory Support Document: Control of Emissions from New Marine Compression-Ignition Engines at or Above 30 Liters per Cylinder," at 3-34 (January 2003)("2003 RSD").[1]  The emissions from these engines contribute significantly to national ozone, carbon monoxide ("CO"), hydrocarbon ("HC"), SOx, NOx, and PM levels, especially in communities near commercial ports or coastal shipping routes such as Seattle, Oakland, Los Angeles, Santa Barbara, and New York.  *See* 2003 Rule, 68 Fed. Reg. at 9751 *and* 2003 RSD at 2-20 and 7-7.  Currently, there are at least 40 major U.S. ports located in federal nonattainment areas for ozone and/or PM.[2]

The engines on Category 3 vessels are, on a relative basis, some of the largest anthropogenic sources of air pollution in the world, yet they remain one of the last major source categories of air pollution to be adequately controlled.  In the 2003 Rule, EPA determined that

---

[1] Available at http://www.epa.gov/otaq/regs/nonroad/marine/ci/r03004.pdf.
[2] EPA Nonattainment Areas Map available at http://www.epa.gov/air/data/nonat.html?us~USA~United%20States; American Association of Port Authorities U.S. Port Rankings available at http://aapa.files.cms-

baseline emissions from these engines in the year 2000 were 214,000 tons of NOx and 19,700 tons of PM annually.  *See* 68 Fed. Reg. at 9754.  At that time, EPA estimated that by 2030, Category 3 vessel emissions would grow to 531,000 tons of NOx and 54,000 tons of PM annually if left uncontrolled, with engine population growth offsetting gains made from the agency's regulatory efforts.  *Id.*

In a more recent proposal, however, EPA acknowledges that the 2007 emission inventory for large marine diesel engines in fact already far surpasses what the 2003 Rule had predicted for the year 2030.  *See* 72 Fed. Reg. 69522, 69526 (Dec. 7, 2007) ("Control of Emissions From New Marine Compression-Ignition Engines at or Above 30 Liters Per Cylinder") (Advance Notice of Proposed Rulemaking or ANPR).  In 2007, large marine diesel engines were responsible for 870,000 tons of NOx and 66,000 tons of PM in the United States.  *Id.*  This represents nearly a *four-fold increase in pollution* in just seven years.  EPA's new estimates suggest that Category 3 marine diesel engines will now be responsible for 2.1 million tons of NOx and 170,000 tons of PM in the U.S. by the year 2030.  *Id.*  These startling new projections demonstrate that with its continuing delay in promulgating emissions standards, EPA is losing significant ground on its mandate to reduce pollution from this rapidly increasing source category.

Such high levels of pollution have serious impacts on environmental and public health. Worldwide, the number of people dying from heart and lung disease as a result of inadequately regulated marine vessel emissions totaled 60,000 in 2002, and that death toll is estimated to grow 40 percent by 2012 due to the rapid increase in global shipping traffic.[3]

Particulate matter and diesel exhaust from marine diesel engines are of particular concern to public health.  EPA recently strengthened the national standards for particulate matter in order

---

plus.com/Statistics/2005%5FUS%5FPortCargoRankings.xls.

[3] Corbett, J.J., and Winebrake, J., *Mortality from Ship Emissions: A Global Assessment*, Environmental Science and

to better protect pubic health and welfare from the dangerous impacts of PM. *See* 71 Fed. Reg. 61144 (October 17, 2006) ("National Ambient Air Quality Standards for Particulate Matter") (NAAQS). Recent studies have shown that exposure to fine particles and sulfates, both of which are emitted by Category 3 marine diesel engines, has been associated with mortality from cardiopulmonary diseases and lung cancer and with effects on the respiratory system such as decreased lung function or the development of chronic respiratory disease. *Id.* at 61152-54. Exposure to fine PM can also lead to increased asthma, coughing, wheezing, and difficulty breathing, increased allergenicity, and premature death. *See* 2003 Rule, 68 Fed. Reg. at 9752. Diesel exhaust itself is considered toxic and carcinogenic, as the chemical components include several hazardous air pollutants or air toxics. *Id.* at 9753.

NOx emissions contribute to particulate matter levels and are also precursors in the photochemical reaction that creates ground-level ozone, or smog. *See* NAAQS, 71 Fed. Reg. at 61146 *and* 2003 Rule, 68 Fed. Reg. at 9751. Smog causes harmful respiratory effects including chest pain, coughing, shortness of breath, exacerbation of asthma, decreased lung function, inflammation of the lung tissue, permanent lung damage, and aggravation of existing respiratory diseases, and may impair the body's immune system defenses. 2003 Rule, 68 Fed. Reg. at 9751. Exposure to smog leads to increased hospital admissions and emergency room visits and increases the use of medications. *Id.* Children, outdoor workers, and people with compromised respiratory systems are most severely impacted by these health effects. *Id.* Recent studies have also linked ozone exposure to increased cardiopulmonary mortality, especially when combined with exposure to PM. ANPR, 72 Fed. Reg. at 69532.

In addition to public health concerns, emissions from large marine diesel engines also harm the environment by degrading visibility, contributing to haze, acid rain and eutrophication

*Technology*, (November 5, 2007)**,** available at http://pubs.acs.org/cgi-bin/sample.cgi/esthag/asap/pdf/es071686z.pdf.

of water bodies, causing soiling and erosion damage to culturally important objects, accelerating the corrosion of metals, paints, and building materials, and by reducing crop yields and productivity of forest ecosystems.  2003 Rule, 68 Fed. Reg. at 9751-53.

## II.     Statutory Context

Prior to 1990, the Clean Air Act did not regulate emissions from nonroad engines and vehicles such as locomotives, tractors, and marine vessels.  To remedy this, Congress enacted, as part of the 1990 Clean Air Act amendments, section 213, 42 U.S.C. § 7547 ("Nonroad Engines and Vehicles"), which requires EPA to reduce emissions from most types of nonroad engines, including marine engines.

In section 213(a)(1), Congress directed the Administrator of EPA to study nonroad engine emissions "to determine if such emissions cause, or significantly contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare."   42 U.S.C. § 7547(a)(1).  The study was to be completed "within 12 months of November 15, 1990," *i.e.*, by November 15, 1991.  *Id.*

Section 213(a)(2) required the Administrator to determine "within 12 months after completion of the study under paragraph (1) [*i.e.*, by no later than November 15, 1992], based upon the results of such study," whether emissions of carbon monoxide, oxides of nitrogen, and volatile organic compounds from nonroad engines, including marine diesel engines, "are significant contributors to ozone or carbon monoxide concentrations" in areas that do not meet federal air quality standards ("nonattainment areas").  42 U.S.C.  § 7547(a)(2).

Finally, section 213(a)(3) required the Administrator, if s/he made an affirmative determination under section 213(a)(2), to "promulgate . . . regulations containing standards applicable to emissions from those classes or categories of new nonroad engines and new

nonroad vehicles . . . which in the Administrator's judgment cause, or contribute to, such air pollution." 42 U.S.C. § 7547(a)(3).  The standards

> shall achieve the greatest degree of emission reduction achievable through the application of technology which the Administrator determines will be available for the engines or vehicles to which such standards apply, giving appropriate consideration to the cost of applying such technology within the period of time available to manufacturers and to noise, energy, and safety factors associated with the application of such technology.

*Id.*  The regulations were to be promulgated "within 12 months after completion of the study under paragraph (1)," *i.e.*, by no later than November 15, 1992.  *Id.*

III.    **History of EPA's Marine Diesel Engine Emissions Rule**

EPA completed the study required by section 213(a)(1) of the Act in November 1991. U.S. Environmental Protection Agency, *Nonroad Engine and Vehicle Emission Study—Report* (1991).[4]  In June 1994, a year and a half past the statutory deadline, EPA made the determination required by section 213(a)(2) of the Act that emissions of carbon monoxide, oxides of nitrogen, and volatile organic compounds from, among other sources, Category 3 marine diesel engines are "significant contributors" to ozone and carbon monoxide concentrations in nonattainment areas.  59 Fed. Reg. 31306, 31307 (June 17, 1994) ("Determination of Significance for Nonroad Sources and Emission Standards for New Nonroad Compression-Ignition Engine At or Above 37 Kilowatts").

In December 1999, seven years after the statutory deadline, EPA promulgated regulations setting standards applicable to emissions from smaller marine diesel engines, but explicitly excluded Category 3 engines and all engines on foreign-flagged vessels.  64 Fed. Reg. 73300 (Dec. 29, 1999) ("Control of Emissions of Air Pollution From New Marine Compression-Ignition Engines at or Above 37 kW").

---

[4] Available at http://www.epa.gov/otaq/regs/nonroad/nrstudy.pdf.

In February 2000, Bluewater Network (at that time a Project within Earth Island Institute but now the Bluewater Team of Plaintiff Friends of the Earth), challenged this rule and EPA's failure to promulgate regulations containing standards applicable to emissions of NOx from Category 3 marine engines. *Bluewater Network v. EPA*, No. 00-1065 (D.C. Cir., petition for review filed February 24, 2000). The case was settled when EPA agreed to publish, by January 31, 2003, a final rule under section 213(a)(3) containing NOx emission standards for new Category 3 marine diesel engines and inviting public comment on whether Category 3 engines installed on foreign-flagged vessels should also be subject to such emission standards while in United States territorial waters.

EPA published the new rule on February 28, 2003, more than ten years after the statutory deadline. The 2003 Rule adopted a "two-tier" approach for setting emissions standards for Category 3 marine diesel engines. 2003 Rule, 68 Fed. Reg. at 9746. "Tier 1" standards codified NOx emissions standards set forth by the International Marine Organization in Annex VI to the International Convention on the Prevention of Pollution from Ships, as Modified by the Protocol of 1978 Relating Thereto (MARPOL Annex VI). *Id.* at 9749. The Tier 1 standards would achieve a 20 percent reduction in projected 2030 emissions levels, *Id.* at 9756, and are readily achievable because, as EPA acknowledged, in 2003 engine manufacturers were already producing engines that meet those standards. *Id.* at 9761.

However, EPA postponed the setting of more stringent and comprehensive "Tier 2" standards for emissions from Category 3 marine engines to a future rulemaking, which EPA committed to complete no later than April 27, 2007. *Id.* at 9746. EPA also committed to consider in that future rulemaking the application of the new Tier 2 standards to Category 3 engines on foreign-flagged vessels in territorial waters of the United States. *Id.* EPA's commitment to take action by April 27, 2007 was codified at 40 C.F.R. § 94.8(a)(2)(ii).

On April 23, 2003, Bluewater Network petitioned the D.C. Circuit Court of Appeals for review of the 2003 Rule, claiming that EPA had violated section 213(a)(3) of the Act and had acted arbitrarily and capriciously in failing to adopt meaningful emission standards for new Category 3 marine diesel engines and in failing to regulate emissions from engines on foreign-flagged vessels. *See Bluewater Network v. EPA,* 372 F.3d 404 (D.C. Cir. 2004). Without reaching the merits of Bluewater Network's arguments, the court upheld the 2003 Rule, relying in part upon EPA's commitment to publish a new final rule for Category 3 marine engines by April 27, 2007. *Id.* at 412 ("Finally, and perhaps most importantly, the EPA has committed to incorporating the new technologies into stricter emissions standards in the 2007 rulemaking.").

However, EPA failed to promulgate a new final rule for Category 3 marine engines on April 27, 2007. Instead, on that date EPA issued a proposed rule[5] purporting to extend the deadline for issuing the required emissions standards for yet another two and one-half years, until December 17, 2009. 72 Fed. Reg. 20977 (April 27, 2007) (Proposed Rule). Plaintiff Friends of the Earth filed the present suit on September 5, 2007 seeking to enforce the nondiscretionary April 27, 2007 deadline. On December 5, 2007, EPA finalized the rule summarily postponing the rulemaking deadline until December 17, 2009 – two and a half years after the April 2007 deadline, and seventeen years after the November 1992 deadline set by Congress in the Clean Air Act. 72 Fed. Reg. 68518 (Dec. 5, 2007) (Final Rule).

## STANDARD OF REVIEW

The standard of review on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "essentially the same" as that for a motion to dismiss under Rule

---

[5] On April 27, 2007 EPA simultaneously issued a direct final rule and a proposed rule, both purporting to extend the regulatory deadline. *See* 72 Fed. Reg. 20948 (April 27, 2007) (Direct Final Rule) *and* 72 Fed. Reg. 20977 (April 27, 2007) (Proposed Rule). Because EPA received adverse comments in response to the direct final rule, EPA subsequently withdrew the direct final rule, leaving only the proposed rule in place. 72 Fed. Reg. 33694 (June 19, 2007) (Withdrawal of Direct Final Rule).

12(b)(6).  *Kopff v. World Research Group, LLC,* 519 F. Supp. 2d 97, 98 (D.D.C. 2007).  Federal

Rule of Civil Procedure 12(b)(6) allows the court to dismiss a complaint for failure to state a

claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "A motion to dismiss for

failure to state a claim upon which relief can be granted is generally viewed with disfavor and

rarely granted."  *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1102 (D.C. Cir. 1985) (internal

citations omitted).  The Court must accept as true all of the factual allegations in the complaint,

*Kopff,* 519 F. Supp. 2d at 99 (citing *Erickson v. Pardus,* 127 S. Ct. 2197 (2007)), and must

construe the complaint "liberally, granting plaintiff the benefit of all inferences that can be

derived from the facts alleged."  *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002)

(internal quotations omitted).  Under Rule 12(b)(6), the defendant has the burden of showing that

no claim has been stated.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F. 2d 1406, 1409 (3d Cir.

1991).

        Federal Rule of Civil Procedure 12(b)(1) allows the court to dismiss a complaint for lack

of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  In reviewing a motion to dismiss for lack

of subject matter jurisdiction, the court must accept as true all the factual allegations contained in

the complaint, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507

U.S. 163, 164 (1993), and must "consider the factual allegations of the complaint in the light

most favorable to the non-moving party."  *Smith v. U.S.,* 518 F. Supp. 2d 139, 145 (D.D.C.

2007).  In ruling on a Rule 12(b)(1) motion, a court may consider materials outside the

pleadings.  *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir.

2005).[6]

---

[6] Accordingly, the Court may consider the scientific study documenting human mortality impacts of emissions from Category 3 marine engines cited herein.  The Court may also consider documents contained in the Federal Register, which are matters of which the Court may take judicial notice as well as matters of public record.

**ARGUMENT**

**I.      Plaintiff Has Stated a Claim Upon Which Relief Can Be Granted**

Plaintiff Friends of the Earth has stated a claim upon which relief can be granted under section 304(a) of the Clean Air Act.  Section 304(a)(2) provides that "any person may commence a civil action on his own behalf … against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."  42 U.S.C. § 7604(a).  EPA's 2003 Rule affirms that "EPA will promulgate final Tier 2 standards for Category 3 engines on or before April 27, 2007."  40 C.F.R. § 94.8(a)(2)(ii).  This requirement is a nondiscretionary duty under the Clean Air Act.  *Sierra Club v. Leavitt,* 355 F. Supp. 2d 544 (D.D.C. 2005).  Because final Tier 2 standards have yet to be promulgated, EPA has failed to perform a nondiscretionary duty and Friends of the Earth has properly brought this claim under section 304 of the Clean Air Act to compel it to do so.

In *Sierra Club v. Leavitt,* this court held that a mandatory regulatory deadline imposed a nondiscretionary duty on the Administrator for purposes of section 304(a) of the Clean Air Act.  355 F. Supp. 2d at 549-57.  The regulation at issue in *Sierra Club* stated:

> No later than July 1, 2003, the Administrator shall propose any requirements to control hazardous air pollutants from motor vehicles and motor vehicle fuels that the Administrator determines are appropriate pursuant to section 202(1)(2) of the [Clean Air] Act.  The Administrator will take final action on such proposal no later than July 1, 2004.

*Sierra Club*, 355 F. Supp. 2d at 549.  The court found that when a regulation (1) imposes a mandatory requirement – indicated by use of the word "shall" – that the Administrator must act by a certain date, and (2) specifies the nature of the required action, then the plain language of the regulation imposes a nondiscretionary duty on the Administrator.  *Id.*  The court went on to hold that the phrase "under this chapter" in section 304(a)(2) "encompasses both the statutory obligations imposed in the Act itself, *and the regulatory obligations promulgated under the*

11

*auspices of the Act.*"  *Id.* at 556 (emphasis added).  The court concluded that a regulation creating

a mandatory duty may properly be challenged, in district court, pursuant to the citizen suit

provision of the Clean Air Act, 42 U.S.C. § 4604(a)(2).  *Id.* at 557.

The plain language of 40 C.F.R. § 94.8(a)(2)(ii), promulgated under the auspices of the

Clean Air Act, created a similar nondiscretionary duty for purposes of section 304(a)(2):  the

phrase "EPA will promulgate" indicates a mandatory requirement to act; the regulation specifies

the required action – promulgation of Tier 2 standards for Category 3 engines; and a precise

deadline for completion of this action is specified – on or before April 27, 2007.  Therefore the

regulation creates a nondiscretionary duty.  Moreover, unlike the rule at issue in *Sierra Club,*

which required the Administrator to "propose any requirements … that the Administrator

determines are appropriate" and to "take final action on such proposal" by a date specified, the

plain language of 40 C.F.R. § 94.8(a)(2)(ii) requires EPA to *complete* the action specified –

promulgation of standards for Category 3 engines – not merely take final action, on or before

April 27, 2007.  Thus, the plain language of the rule does not give EPA the "flexibility" to

"propose a regulation or to articulate a decision not to do so" by the regulatory deadline.  *Sierra

Club,* 355 F. Supp. 2d at 550-51.  Instead, the rule clearly requires promulgation of regulations

on or before the deadline and does not contemplate the possibility of a decision not to

promulgate the required rules or to defer such promulgation.[7]  Because EPA has not promulgated

such regulations, it has failed to perform a nondiscretionary duty under the Clean Air Act, and

Friends of the Earth has stated a claim upon which relief can be granted.

---

[7] EPA mischaracterizes the duty imposed by the 2003 Rule as a "regulatory commitment *to consider* Tier 2
standards in a future rulemaking."  EPA Mot. to Dismiss at 13 (emphasis added).  To the contrary, however, the
regulation clearly states that "EPA *will promulgate* final Tier 2 standards for Category 3 engines on or before April
27, 2007."  40 C.F.R. § 94.8(a)(2)(ii) (emphasis added).  This is more than merely a commitment to consider; it is a
commitment to take action.

EPA argues it has not yet failed to perform a nondiscretionary duty because on December 5, 2007, three months after Friends of the Earth filed its complaint to enforce the April 27, 2007 deadline, EPA changed the April 27, 2007 deadline to December 17, 2009. EPA Mot. to Dismiss at 12-13. However, because the duty to promulgate regulations by April 27, 2007 is a nondiscretionary duty, EPA does not have the discretion unilaterally to render the deadline "no longer applicable." EPA Mot. to Dismiss at 13. If it were otherwise, EPA could simply ignore a nondiscretionary duty to act by indefinitely postponing the required action, rendering the concept of a "nondiscretionary duty" illusory.

EPA does not dispute that section 213(a)(3) of the Clean Air Act establishes a nondiscretionary duty to promulgate emissions standards for Category 3 marine diesel engines. EPA Mot. to Dismiss at 11. However, EPA now claims that completion of only Tier 1 of its two-part emission-control program satisfies the requirements of section 213(a)(3), and that Tier 2 is merely the exercise of EPA's authority to "from time to time revise" the standards issued under section 213(a)(3). EPA Mot. to Dismiss at 12. This is a distortion of EPA's intention in promulgating the 2003 Rule and is also contrary to the D.C. Circuit's understanding of the standards promulgated. *See Bluewater Network v. EPA*, 372 F.2d at 412.

When EPA promulgated the 2003 Rule, it clearly stated that the "emission-control program we are adopting in this rule meets [the section 213(a)(3)] criteria through a two-part approach," 68 Fed. Reg. at 9748, and referred to the Tier 1 standards as "interim standards." *Id.* at 9761. Thus, it is clear that EPA considered the Tier 2 standards to be an integral part of the regulations required by section 213(a)(3). The D.C. Circuit upheld this two-tier approach to meeting the requirements of section 213(a)(3), but did so, in important part, upon the basis of EPA's commitment to promulgate Tier 2 standards on or before April 27, 2007. *See Bluewater Network v. EPA,* 372 F.3d at 412 (after stating several reasons for upholding EPA's two-tier

scheme, court states, "Finally, *and perhaps most importantly*, the EPA has committed to incorporating the new technologies into stricter emissions standards in the 2007 rulemaking.") (emphasis added). It is not at all clear that the court would have upheld the two-tier approach had it known that EPA would renege on its commitment. Because EPA chose to satisfy its obligation under section 213(a)(3) to "achieve the greatest degree of emission reduction achievable" in a two-step process, completion of both Tier 1 and Tier 2 is necessary for compliance with the requirements of section 213(a)(3). EPA cannot now characterize the Tier 2 standards as the exercise of its discretion to "from time to time revise" the standards achieved by completion of only one half of the two-part emission control program. By failing to promulgate the Tier 2 standards, EPA has failed to complete promulgation of standards meeting the requirements of section 213(a)(3). Therefore EPA has failed to perform its nondiscretionary duty under section 213(a)(3) of the Clean Air Act.

## II.     This Court Has Jurisdiction Under Section 304 of the Clean Air Act

The Clean Air Act establishes a bifurcated jurisdictional scheme: jurisdiction will lie with either the district court or the court of appeals depending on the nature of the underlying challenge. Friends of the Earth has properly brought this deadline suit under section 304 – the "citizen suit" provision of the Act. 42 U.S.C. § 7604. Section 304(a) of the Act expressly grants the district courts jurisdiction "to order the Administrator to perform such [nondiscretionary] act or duty" and "to compel agency action unreasonably delayed." 42 U.S.C. § 7604(a). As described above, Friends of the Earth requests this Court to order the EPA to perform its nondiscretionary duty under section 213(a)(3) and 40 C.F.R. § 94.8(a)(2)(ii), and asserts that EPA's two-and-a-half year postponement of the deadline for promulgation of the required Tier 2 emissions standards constitutes unreasonable delay. Therefore, according to the plain language of section 304(a), this Court has jurisdiction over Plaintiff's claims.

EPA asserts that Plaintiff's claims are challenges to the content of the December 2007 rule postponing promulgation of Tier 2 standards until December 2009 and argues that such claims are reviewable only in the D.C. Circuit Court under section 307(b)(1) of the Act. *See* 42 U.S.C. § 7607(b)(1)  (granting the D.C. Circuit Court jurisdiction to review "nationally applicable regulations promulgated or final action taken by the Administrator").  EPA Mot. to Dismiss at 13.  However, this is a mischaracterization of Friends of the Earth's claim.  Friends of the Earth seeks to remedy EPA's failure to perform a nondiscretionary duty by a specified deadline.  Such deadline suits fall squarely within the purview of the district courts under section 304(a).  *See, e.g., Sierra Club v. Johnson*, 444 F. Supp. 2d 46 (D.D.C. 2006) (district court has jurisdiction under section 304 to compel the Administrator to meet statutory deadline);  *Sierra Club v. Leavitt,* 355 F. Supp. 2d at 556 (district court has subject matter jurisdiction under section 304 to compel compliance with nondiscretionary regulatory deadline); *Environmental Defense v. Leavitt,* 329 F. Supp. 2d 55 (D.D.C. 2004) (deadlines in CAA create nondiscretionary duties to act for purposes of district court's jurisdiction under section 304); *Sierra Club v. Ruckelshaus,* 602 F. Supp. 892 (N.D. Cal. 1984) (suit to compel EPA to comply with statutory deadline properly brought under section 304).

Courts have generally construed deferrals of action as "final action" for purposes of review under section 307(b)(1) of the Act, when such deferral is embedded in a rule promulgating certain substantive standards that change the status quo.  *See, e.g., Maine v. Thomas*, 874 F.2d 883 (1st Cir. 1989) (deferment is final agency action ripe for review where it is connected to substantive regulation).  Unlike *Maine v. Thomas*, however, this is not a case of agency action entwined with inaction.  Instead, EPA's action was merely the announcement that it will continue to defer compliance with its obligations under section 213 of the Act and under

the 2003 Rule.  This constitutes ongoing failure to achieve what the Clean Air Act required EPA to achieve by November 1992.

Moreover, the December 2007 deferment rule refers only to deferment of promulgation of Tier 2 emissions standards and does not address EPA's commitment to consider on or before April 27, 2007, application of the emission standards to foreign-flagged vessels that enter U.S. waters.  Not only does the December 2007 deferment rule fail to indicate whether or not emissions standards will apply to foreign-flagged vessels, but the complete absence of reference to foreign-flagged vessels in the rule demonstrates that EPA apparently has not considered this issue at all.[8]  Because EPA has not taken *any* action to consider application of emission standards to foreign-flagged vessels, there has been no final agency action warranting Circuit Court review under section 307(b)(1).  Therefore, jurisdiction to compel EPA to fulfill its nondiscretionary duty to consider application of emissions standards to foreign-flagged vessels lies with the district court under section 304(a)(2).

Finally, concern for judicial economy supports this Court's review of Plaintiff's claims under section 304(a)(2).  The ambiguities of the bifurcated jurisdictional scheme in the Clean Air Act have plagued the judicial system since the Act was first enacted and have led courts to urge Congress to amend it.  *See, e.g., Utah Power & Light Co. v. EPA*, 553 F.2d 215, 219 n.20 (D.C. Cir. 1977) (urging Congress to amend the citizen suit provision of the CAA to allow transfer of improperly filed claims).  If this Court were to grant EPA's motion and dismiss this case, and if Friends of the Earth were to successfully petition the D.C. Circuit for review of EPA's decision to defer compliance with its mandatory obligation to promulgate regulations by the April 27,

---

[8] The only time foreign-flagged vessels are mentioned in the December 5 Final Rule is in EPA's summary of the comments it received in response to its April 27, 2007 Direct Final Rule.  Final Rule, 72 Fed. Reg. at 68521-22. EPA there states, "we understand the positions expressed by commentators … and will be taking these concerns into account as we pursue a decision on this issue."  *Id*. at 68522.

2007 deadline,[9] Friends of the Earth would find itself in the position of having to file a third

lawsuit, once again in the district court, to compel performance of EPA's nondiscretionary duty

to promulgate the required regulations.  This would not only result in piecemeal litigation and

waste of judicial resources, but it would exacerbate EPA's egregious 15-year (and counting)

delay in promulgating meaningful emissions standards for Category 3 marine engines.  Because

the human health and environmental harms caused by inadequately regulated Category 3 marine

engine emissions are severe, and because ship transport to accommodate global trade is growing

rapidly, Friends of the Earth – and the public – cannot afford any further delay.

III.    **The Administrative Procedure Act Provides an Alternative Basis for Plaintiff's Claims**

        In the event that the court determines that Friends of the Earth may not bring its claims

under the citizen suit provision of the Clean Air Act, the Administrative Procedure Act provides

an alternative basis for Friends of the Earth's claims.  *Conservation Law Foundation v. Busey*, 79

F.3d 1250 (1st Cir. 1996) (judicial review available under the APA when review not available

under section 304 of the CAA).  *See also, Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)

(central purpose of the APA is to 'provid[e] a broad spectrum of judicial review of agency

action); *Biodiversity Legal Foundation v. Norton*, 285 F.Supp.2d 1 (D.D.C. 2003) (plaintiffs may

properly assert claims under both the APA and the citizen suit provisions of the Endangered

Species Act).  EPA's failure to promulgate regulations containing standards applicable to

emissions from Category 3 marine diesel engines as required by section 213(a) of the Clean Air

---

[9] Section 307(b)(1) of the Act, 42 U.S.C. § 7607(b)(1), provides that challenges to final rules brought in the Court of Appeals must be filed "within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register . . . ."  Sixty days from the date of EPA's December 5, 2007 decision to postpone its deadline for promulgating emissions standards for  Category 3 marine diesel engines was February 5, 2008.  Because it was clear that this 60-day period would run before this Court had an opportunity to rule on EPA's motion to dismiss, Plaintiff Friends of the Earth filed a protective Petition for Review in the Court of Appeals for the District of Columbia on January 25, 2008.  *Friends of the Earth v. U.S. Environmental Protection Agency*, No. 08-1031.  This was a precautionary filing and in no way constitutes an admission by Friends of the Earth that this Court lacks jurisdiction.

Act, is a nondiscretionary agency action unlawfully withheld.  5 U.S.C. § 706(1).

EPA argues that according to section 307(d)(1) of the Clean Air Act, judicial review is not available under the APA.  EPA Mot. to Dismiss at 15.  Section 307(d)(1) of the Act states that section 706 of title 5 shall not apply to "the promulgation or revision of any regulation pertaining to nonroad engines or nonroad vehicles under section 7547 of this title."  42 U.S.C. § 7607(d)(1)(R).  However, this provision is not applicable to the present action because Friends of the Earth is not seeking review of a regulation described in section 307(d)(1)(R), but is instead challenging EPA's failure to act when it had a nondiscretionary duty to do so.  *See NRDC v. EPA*, 902 F.2d 962, 982 (D.C. Cir. 1990) ("The word 'promulgate' in the CAA refers only to the original issuance of a standard, while the word 'revision' refers to subsequent modifications of that standard.").  Because there is no challenge to the promulgation or revision of a regulation pertaining to nonroad engines or nonroad vehicles, Plaintiff's claims do not fall within the Clean Air Act exception to the application of section 706 of the APA.

## CONCLUSION

For the foregoing reasons, Friends of the Earth respectfully requests that this Court deny EPA's Motion for Judgment on the Pleadings and Motion to Dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Respectfully submitted,


DATED:  February 20, 2008          /s/ Sarah H. Burt
                                    SARAH H. BURT, *Pro Hac Vice*
                                    MICHAEL R. SHERWOOD, *Pro Hac Vice*
                                    Earthjustice
                                    426 17th Street, 6th Floor
                                    Oakland, CA  94612
                                    Tel: (510) 550-6700
                                    Fax: (510) 550-6740



DATED:  February 20, 2008          /s/
                                    JAMES S. PEW (D.C. Bar 448830)
                                    Earthjustice
                                    1625 Massachusetts Ave., N.W., Suite 702
                                    Washington, DC 20036-2212
                                    Tel: (202) 667-4500
                                    Fax: (202) 667-2356

                                    Attorneys for Plaintiff Friends of the Earth

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRIENDS OF THE EARTH, *et. al.,* ) | |
| ) | |
| ) | Civ. No. 07-1572 (RMC) |
| Plaintiff, ) | (Consolidated with 07-1744 and 07-2319) |
| v. ) | |
| ) | Judge Rosemary M. Collyer |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY and STEPHEN L. ) | |
| JOHNSON, Administrator, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PROPOSED ORDER**

Before the Court is EPA's Motion for Judgment on the Pleadings as to plaintiffs Friends

of the Earth and South Coast Air Quality Management District, and EPA's Motion to Dismiss as

to plaintiff Santa Barbara County Air Pollution Control District.  Having considered EPA's

Motion and all materials submitted in support of and in opposition thereto, the Court finds that

EPA's Motion for Judgment on the Pleadings and Motion to Dismiss should be, and hereby are,

DENIED.


    SO ORDERED.


Dated:                          _____
                                ROSEMARY M. COLLYER
                                United States District Judge