## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, AND SANTA BARBARA COUNTY AIR POLLUTION CONTROL DISTRICT ) ) ) ) ) | Civ. Case No. 07-1572 (consolidated with 07-1744) (consolidated with 07-2319) |
| ) | |
| Plaintiffs, ) | Judge Rosemary M. Collyer |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., ) ) | |
| ) | |
| Defendants ) | |
| ) | |

**Santa Barbara County Air Pollution Control District**

**And**

**South Coast Air Quality Management District**

**Response Brief**

**To**

**EPA's Motion To Dismiss.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………......…..………..iii

INTRODUCTION……………………………………………………………....1

THE MOTION BEFORE THIS COURT …………….………......……………….…4

INTERESTS OF THE AIR DISTRICTS …..……………………….……………....4

FACTS…………………………..…………………………………………6

STANDARD OF REVIEW ……………………………………..…………13

ARGUMENT……………………………………………………………15

 I. This is a Citizens' Suit Filed Pursuant to Section 304 of The Clean Air

   Act, 42 U.S.C. Section 7604……………………………..………………15

 II. EPA's Adoption of its "Do Nothing" 2007 Rule Does Not Deprive This

   Court of Jurisdiction Under § 304 Because That Rule Did Not Constitute

   "Final Action"………………………………..…………………..…………16

   A. This Court Should Exercise Prudential Considerations When

    Determining If EPA Has Taken Final Action……………………16

   B. EPA Has Not Taken Final Action Because It Is Still Engaged In

    Rulemaking…………………………………………..……….…17

   C. The Lack Of A Well Developed Administrative Record For The

    December 2007 Rule Demonstrates EPA Has Not Taken Final

    Action…………………………………………………..………..19

 III. EPA Has Failed To Meet Its Mandatory Duty Under

   Section 213………………………………….…………………………… 20

i

IV.   EPA Has A Mandatory Duty To Determine If It Has Jurisdiction Over

      Foreign-Flagged Vessel………………………………………..………..…22

V.    EPA May Not Delay Regulation In Deference To Pending Negotiations

      On Amendments To Annex VI…………………………...……..……..…24

VI.   The APA Claim Is Proper As An Alternative Pleading………………….24

CONCLUSION……………………………………….........………………..………...…28

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Abramowitz v. EPA* 832 F.2d 1071 (9th Cir. 1987). ................................................3, 16, 18

*Allegheny County Sanitary Authority v. United States Environmental Protection Agency*, 732 F.2d 1167 (3d Cir. 1984) ...............................................................................26

*Bluewater Network v. EPA* 372 F.3d 404 (D.C. Cir. 2004),.....................................8, 9, 21

*Biodiversity Legal Foundation v. Norton*, 285 F.Supp.2d 1 (D.D.C. 2003) .....................27

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) .........................................................25, 26

*Commonwealth of Puerto Rico v. United States*, 490 F.3d 50 (2007)...............................14

*Conley v. Gibson*, 355 U.S. 41 (1957).............................................................................13

*Conservation Law Foundation v. Busey*, 79 F.3d 1250 (1st Cir. 1996) ...............24, 25, 26

*Environmental Defense Fund v. Tidwell*, 837 F.Supp. 1344 (E.D.N.C. 1992) .................26

*Husquvarna AB v. EPA*, 254 F.3d 195 (1990)...............................................2, 7, 20, 21, 24

*Japan Whaling Association v. American Cetacean Society*, 478 U.S. 221(1986) ............25

*Massachusetts v. EPA*, 127 S.Ct. 1438, 167 L.Ed.2d 248, 277 (2007) ......................23, 24

*NRDC v. Administrator*, 902 F.2d 962, 985 (D.C. Cir. 1990) *vacated in part and dismissed in part by* 921 F.2d 326, 318 ....................................................2, 3, 7, 16, 17, 21

*NRDC v. EPA*, 655 F.2d 318, 328 (D.C. Cir. 1981).........................................................21

*Oregon Natural Resources Council v. United States Forest Service*, 834 F.2d 842 (9th Cir. 1987) .........................................................................................................26

*Robinson v. District of Columbia*, 403 F.Supp.2d 39 (D.D.C. 2005)...............................13

*Save the Bay, Inc. v. Administrator*, 556 F.2d 1282 (5th Cir. 1977) ..................................19

*Sierra Club v. Leavitt*, 355 F.Supp.2d 544 (D.D.C. 2005)..........................................15, 18

*Trudeau v. Federal Trade Commission*, 456 F.3d 178 (D.C.Cir. 2006) ...........................14

*United States Department of Energy ("DOE") v. Ohio*, 503 U.S. 607 (1992) .................. 14

## FEDERAL STATUTES

5 U.S.C. §§ 701 ........................................................................................................... 3, 4

5 U.S.C. § 702 ............................................................................................................. 3, 4

5 U.S.C. § 706 ................................................................................................................ 27

5 U.S.C. § 706(2) ........................................................................................................... 27

16 U.S.C. § 1540 ............................................................................................................ 27

42 U.S.C. § 7545 ...................................................................................................... passim

42 U.S.C. § 7547(a) (3) ............................................................................ 2, 6, 7, 15, 20, 24

42 U.S.C. § 7604 ..................................................................................................... passim

42 U.S.C. § 7607 ..................................................................................................... passim

## FEDERAL REGULATIONS

40 C.F.R. § 94.8(a)(2) .................................................................................................. 9, 15

## FEDERAL RULES OF CIVIL PROCEDURE

FRCP 12(b)   ................................................................................................................... 13

## STATE STATUTES

Health and Safety Code §40001 ............................................................................. 4

## Introduction

The Santa Barbara County Air Pollution Control District and South Coast Air Quality Management District (collectively "Air Districts") filed separate actions under section 304 of the Clean Air Act (the "citizen's suit provision") to compel the Administrator of the United States Environmental Protection Agency ("EPA") to issue without delay a final rule regulating air pollution from Category 3 marine vessel diesel engines pursuant to section 213(a) of the Clean Air Act, 42 U.S.C. § 7547(a).[1]

Under Section 213 of the Clean Air Act, EPA has a clear nondiscretionary duty to regulated air pollution from Category 3 marine vessels. Category 3 marine vessels are ocean-going vessels having a per-cylinder displacement at or above 30 liters, are used primarily for large ocean-going vessels, and are among the largest engines in the world. 68 Fed. Reg. 9746, 9758 (Feb. 28, 2007). As discussed *infra*, air pollution from these vessels severely impacts air quality in both districts, exacerbating efforts to attain and maintain federal and state ozone and particulate matter standards, to the detriment of the health and welfare of the residents of each district.

Section 213 was adopted as part of the Clean Air Act Amendments in 1990 and required EPA to regulate all "nonroad engines," including marine vessels, which EPA determined were a "significant contributor" to ozone and carbon monoxide concentrations in more than 1 nonattainment area in the United States. 42 U.S.C. § 7545(a). EPA was required to make this "significance determination" by 1992; *id.*, however, EPA delayed until 1994, at which time it determined that all nonroad engines must be regulated. 59 Fed. Reg. 31306, 31307 (June 17, 1994). Under Section 213(a)(3),

---

[1]  South Coast filed its complaint on September 28, 2007 and Santa Barbara filed on December 26, 2007. A separate action was filed by the Friends of the Earth on September 5, 2007. This Court granted EPA's unopposed motion to consolidate all three cases on January 4, 2008.

EPA had 12 months after making the significance determination to promulgate regulations. 42 U.S.C. § 7547(a)(3). Had EPA acted timely, it would have regulated marine vessels in 1993. *Id.*

The Court of Appeal for the District of Columbia has long recognized that Section 213 is a "technology forcing" provision, which is intended to press for the development and application of improved technology rather than being limited to the status quo. *Husqvarna AB v. EPA*, 254 F.3d 195, 201 (D.C. Cir. 2001), *and see gen. NRDC v. EPA*, 655 F.2d 318, 328 (D.C. Cir. 1981). Notwithstanding this important duty and the harm caused by air pollution from marine vessels, EPA has repeatedly missed deadlines to regulate Category 3 marine vessels, including most recently a deadline of April 27, 2007.

On December 5, 2007, EPA adopted a "do nothing" rule, unilaterally granting itself until December 19, 2009 to meet its mandate. 72 Fed. Reg. 68518 (Dec. 5, 2007). Perhaps most egregious about EPA's latest inaction is that the agency still refuses to determine if it has jurisdiction to regulate foreign-flagged vessels operating in U.S. territorial waters, even though EPA acknowledges that about <u>90 percent</u> of the 1999 entrances to U.S ports were made by these vessels. 72 Fed. Reg. 69522, 69536.

By adopting the "no nothing" rule, EPA is attempting to circumvent the jurisdiction of this Court. In its motion to dismiss, EPA maintains that its December 5, 2007 rule adoption met EPA's mandatory duty under Section 213 and deprived this Court of jurisdiction under Section 304. EPA contends that its action may only be reviewed by the court of appeal, which reviews "final actions" of EPA under Section 307 of the Clean Air Act, 42 U.S.C. § 7607.

EPA's motion to dismiss must be denied because it is well settled that a district court must determine the essence and rational for EPA's action to see if it is a "final action" subject to review under Section 307. "[I]t is the effect of the action and not its label that must be considered" when determining if it is final. *NRDC v. Administrator* 902 F.2d 962, 986 (D.C. Cir. 1990) *vacated in part and dismissed in part by* 921 F.2d 326 (D.C. Cir. 1991),[2] quoting *Abramowitz v. EPA* 832 F.2d 1071, 1075 (9th Cir. 1987). Inevitably, prudential considerations must be weighed to determine jurisdiction. *NRDC v. Administrator*, 902 F.2d at 986.

The application of prudential considerations to this case show that, despite EPA's December 2007 rule adoption, EPA has not taken final action because it has not adopted the substantive standards mandated under Section 213, is still engaged in a rulemaking to adopt such standards, has proposed an Advanced Notice of Proposed Rulemaking that seeks public comment on such standards, and has not compiled a significant administrative record to support the December 2007 action that would facilitate constructive review of these issues by the Court of Appeal under Section 307. Under these circumstances, EPA's December 2007 rule adoption is not a "final action" and review by this Court under Section 304 of the Clean Air Act is proper.

In the alternative, should this Court not have jurisdiction under Section 304, the Air Districts seek relief under the Administrative Procedures Act, ("APA"), 5 U.S.C. §§ 701 et seq.

---

[2] This opinion was vacated in part when the environmental petitioners subsequently moved for voluntary dismissal of their petition after the case had been decided.

3

**The Motion Before This Court.**

EPA has filed a motion for judgment on the pleadings as to Friends of the Earth and South Coast. Defs.' Motion at 2. In that same motion, EPA seeks dismissal against Santa Barbara under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3] EPA's rationale for both parts of the consolidated motion are that this court lacks subject matter jurisdiction. *Id.* EPA also contends the Air Districts' claim under the APA is improper primarily based on EPA's position that the Air Districts' remedy under section 304 is exclusive, even though EPA maintains Section 304 of the Clean Air Act does not apply in this case and the Air Districts' are pursuing the APA claim in the alternative.

**Interests of the Air Districts.**

Santa Barbara.  The Santa Barbara County Air Pollution Control District is a political subdivision of the State of California and is an air pollution control district organized and existing pursuant to Sections 40100 et seq. of the California Health and Safety Code.  The District includes the jurisdictional boundaries of the County of Santa Barbara.  The District was only recently designated by EPA as in "attainment" for the National Ambient Air Quality Standards ("NAAQS") for the 8-hour ozone standard and in attainment for the annual particulate matter 2.5 standard ("PM2.5").  The District is the agency primarily responsible under state law for attaining and maintaining the NAAQS. Cal. Health & Safety Code section 40001.  Although the District does not have a port, it does have 130 miles of coastline that are heavily traveled (over 7,000 transits in 2005) by ocean-going vessels mostly heading to or from the ports of Long Beach, Los Angeles, or

---

[3] EPA did not seek a motion for judgment on the pleadings as to Santa Barbara because EPA has yet to file an answer as to this District.

Hueneme.  Given the location of the Santa Barbara Channels Islands, large ships are often traveling and emitting pollutants just ten to fifteen miles off the coast.  These ships are significant emissions sources, growing due to increasing trade with Asia.  Currently, the District estimates that ocean-going-vessels emit over 45 percent of the emissions of oxides of nitrogen ("NOx") in Santa Barbara County and, if left uncontrolled, will contribute almost 75 percent of the District's NOx pollution by the year 2020.[4]

In 2003, EPA acknowledged that ocean-going vessels had "contribute[d] about 37 percent of total area NOx in the Santa Barbara area."  68 Fed. Reg. at 9751.  EPA further acknowledged that these emissions "are comparable to (even slightly larger than) the amount of NOx produced onshore by cars and truck" and that this "mix of emission sources led Santa Barbara to point out that they will be unable to meet air quality standards for ozone without significant emission reductions from these vessels, even if they completely eliminate all other sources of pollution."  *Id.* at 9755.

South Coast.  The South Coast Air Quality Management District is the regional agency primarily responsible for the control of air pollution in the South Coast Air Basin, which includes the non-desert portions of Los Angeles, Orange, Riverside, and San Bernardino Counties.  The Basin has the worst air pollution in the nation and is nonattainment both for the ozone and PM2.5 standards.  Each year, over 1,200 people die in the District from pollution caused by sources in goods movement, including ships.  Ocean-going vessels contribute significant amounts of air pollution.  About 6,000 vessel calls per year are made at the ports of Los Angeles and Long Beach, collectively the largest port in the nation and among the largest in the world.  Some 44 percent of all

---

[4] The Air Districts request Judicial Notice of the Comment Letter by Terry Dressler, Air Pollution Control Officer, Santa Barbara County Air Pollution Control District, dated May 8, 2007, submitted to EPA for Rulemaking Docket No. EPA-HQ-OAR 2007-0120, which can be found at www.regulations.gov. .

containerized trade in the nation flows through these ports. Ships emit more NOx, a precursor to both ozone and PM2.5 standards, than all the refineries, power plants, and the over 300 additional largest stationary sources in the Basin. Ships are the largest single source of sulfur oxides, amounting to about 50 percent of these emissions. Ships also contribute large amounts of diesel particulate, which is not only a contributor to the PM2.5 standard, but also a carcinogenic air contaminant. Diesel particulate is responsible for over 70 percent of the cancer risk from air pollution in the Basin. Near the ports, caner risks of over a thousand in a million were identified. Moreover, ships are virtually the only significant source category with emissions projected to increase, due to growing foreign trade and lax emission controls.[5]

### Facts

Clean Air Act Amendments; Section 213 – (1990). In 1990, Congress substantially amended the Clean Air Act, including the addition of Section 213 requiring the regulation of "nonroad engines and nonroad vehicles." Clean Air Act § 304(a); 42 U.S.C. § 7547(a). Section 213(a)(1) required EPA to conduct a study of emissions from nonroad engines and nonroad vehicles, including marine vessels, to determine if such emissions cause, or significantly contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare. The study was to be completed by November, 1991. 42 U.S.C. § 7547(a)(1). Once this study was complete, EPA was required to make a significance determination within 12 months. 42 U.S.C.§7547(a)(2).

---

[5] The Air Districts request judicial notice of the comment letter from Barry R. Wallerstein, Executive Officer, South Coast Air Quality Management District, to EPA, dated May 29, 2007, submitted to EPA for Rulemaking Docket No. EPA-HQ-OAR 2007-0120, which can be found at www.regulations.gov.

For nonroad engines found to be significant emitters, EPA was required to adopt a regulation within 12 months of completion of the study. *Id.*

Under Section 213(a), EPA was required to adopt a regulation to "achieve the greatest degree of emission reduction achievable through the application of technology which the [EPA] determines will be available for the engines." 42 U.S.C. § 7547(a), emphasis added. EPA was required to give "appropriate consideration to the cost of applying such technology within the period of time available to manufacturers and to noise, energy, and safety factors associated with the application of such technology." *Id.* These standards were to "take effect at the earliest possible date considering the lead time necessary to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period and energy and safety." 42 U.S.C. § 7547(b). Finally, the EPA must revise the standards from "time to time." 42 U.S.C. § 7547(a)(3).

Section 213 Is "Technology Forcing." Section 213 is a "technology forcing" provision in the Clean Air Act. *Husqvarna AB v. EPA*, 254 F.3d 195, 201 (D.C. Cir. 2001), *and see gen. NRDC v. EPA*, 655 F.2d 318, 328 (D.C. Cir. 1981) (quoting S. Rep. No. 91-1196, at 24 (1970)), "Congress intended the agency to project future advances in pollution control capability. It was expected to press for development and application of improved technology rather than be limited by that which exists today."

EPA Determines Marine Vessels Must Be Regulated – (1991 - 1994). EPA completed the study in November 1991. *Nonroad Engine and Vehicle Emission Study-Report* (1991), available at www.epa.gov/otaq/regs/nonroad/nrstudy.pdf. It was not until 1994 – a year and one-half late -- that EPA concluded that nonroad engines must be

7

regulated. 59 Fed. Reg. 31306, 31307 (June 17, 1994). Having made this finding, EPA

now had a mandatory duty under Section 213 to regulate these sources of air pollution.

Sierra Club Lawsuit – (1993). EPA was sued by the Sierra Club in 1993 for not

having adopted regulations setting standards for marine vessel and agreed to propose

emission standards for marine engines by October 30, 1994 and to promulgate final

regulations by November 22, 1995. 59 Fed. Reg. 55930, 55932 (Nov. 9, 1994).

EPA's 1999 Rule. EPA did not promulgate rules until December 1999, and even

then excluded Category 3 engines and all engines on foreign-flagged vessels. 64 Fed.

Reg. 73300 (Dec. 29, 1999). Category 3 engines are some of the largest polluting

engines in the world, with engine cylinders in excess of 30 liters. 68 Fed. Reg. at 9758.

Earth Island Lawsuit – (2000). EPA was sued in 2000 by Earth Island Institute

and settled the case by agreeing to publish, by January 31, 2003, a rule under Section

213(a)(3) containing NOx emission standards for new Category 3 marine diesel engines,

and to consider whether Category 3 engines on foreign-flagged vessels should be subject

to such emission standards while in U.S. waters. *Bluewater Network* 372 F.2d at 408.

EPA's 2003 Rule. On February 28, 2003, the Administrator promulgated a rule

for Category 3 marine vessel engines -- "New Marine Compression-Ignition Engines at

or Above 30 Liters per Cylinder." 68 Fed. Reg. 9746 (Feb. 28, 2003). The 2003 rule

implemented a "two-tiered" approach. *Id.* Tier 1 did not require any emission reductions

beyond those already adopted by the International Marine Organization ("IMO") in the

"Annex VI" treaty agreement. As acknowledged by EPA, Tier 1 implemented standards

"manufacturers are generally already meeting" and required "no additional development,

design, or testing beyond what manufacturers are already doing to meet the Annex VI . . .

standards." *Bluewater Network v. EPA* 372 F.3d 404, 408-409 (D.C. Cir. 2004), quoting

68 Fed. Reg. at 9761.

   To meet the technology forcing requirement of Section 213, EPA proposed to

adopt Tier 2 standards by April 27, 2007. Indeed, it is the Tier 2 standards that were the

key to EPA fulfilling its duty under Section 213 to adopt standards that "achieve the

greatest degree of emission reduction achievable through the application of technology

which the [EPA] determines will be available for the engines . . ." EPA adopted a

regulation committing EPA to adopt Tier 2 standards by April 27, 2007, which is set

forth in 40 C.F.R. § 94.8(a)(2)(ii).

   *Bluewater Network* Decision – (2004). In 2003 EPA was sued for failing to

regulate Category 3 engines to the extent required by statute and for failing to regulate

foreign-flagged vessels. *Bluewater Network v. EPA*, 372 F.3d. 404 (D.C. Cir. 2004).

The Court of Appeals held that EPA's two-tiered approach reasonably implemented the

requirements of Section 213 because EPA had maintained that more time was needed to

gather complete information. *Id.* at 412. However, the Court upheld EPA's approach

because EPA had committed to adopt Tier 2 controls by April 27, 2007, stating: "Finally,

and perhaps most importantly, the EPA has committed to incorporating the new

technologies into stricter emission standards in the 2007 rulemaking." *Id.* at 412. The

Tier 1 standards were specifically recognized as "interim standards." *Id.* The Court also

concluded, based on EPA's commitment to address this issue in rulemaking by April 27,

2007, that the challenge to EPA's deferral of the issue of whether to regulate foreign

flagged vessels was "premature." *Bluewater Network*, 372 F. 3d at 413.

9

Annex VI Negotiations Resume – (2006).  As long ago as 1998, EPA maintained that adopting standards for Category 3 marine vessels "would be unnecessary and redundant" because EPA expected the U.S. vessels to comply with the Annex VI standards, which would take effect in 2004. *Bluewater Network* v. EPA 372 F.2d at 408. Prior to the adoption of the 2003 Rule, EPA had asserted that delay in adopting Tier 2 standards for Category 3 marine vessels was justified in part in order to allow the United States "to pursue further negotiations in the international arena to achieve more stringent global emission standards for marine diesel engines." *Bluewater Network* at 409.  EPA has recently acknowledged, however, that negotiations regarding Amendments to Annex VI treaty did not resume until April 2006, some 3 years after the 2003 rule was adopted. Advanced Notice of Proposed Rulemaking, 72 Fed. Reg. 69522, 65937 (Dec. 7, 2007).

EPA has also acknowledged that the "most recent" round of negotiations on Annex VI amendments took place in April 2007.  At that time, the United States submitted "a paper" to "the April 2007 BLG Sub-Committee setting out an approach for substantially reducing emissions from marine diesel engines." 72 Fed. Reg. 68518, 68552.

"Direct Final" Rule & Proposed Extension Rule – (2007).  On April 27, 2007, EPA published a proposed "direct final" rule that would have extended the deadline to adopt standards for Category 3 marine vessels from April 27, 2007 to December 17, 2009. 72 Fed. Reg. 20948 (April 27, 2007).  A "Direct Final" rule is a process reserved for uncontroversial EPA rulemaking proposals where no public comment is expected. *Id.* In proposing the direct final rule, EPA stated that a longer lead time was justified by "a variety of technical reasons" and to "facilitate international negotiations over the next

10

round of reductions that could be implemented under Annex VI . . ." *Id.* at 20950. Given that EPA had already been sued 3 times for its failure to meet Section 213 deadlines requiring regulation of Category 3 marine vessels, it was amazing EPA concluded that a direct final rule to extend its own deadline was appropriate in this situation.

At the same time, EPA published the proposed a rule for public comment to extend its April 27, 2007 deadline to December 19, 2008. 72 Fed. Reg. 20977 (April 27, 2007). EPA announced that if no adverse comments were received on the direct final rule, it would become final and no further action on the proposed rule would be taken. *Id.* at 20978. EPA also stated that it did not intend to conduct a second comment period on this action. *Id.* In any event, adverse public comment was received and EPA withdrew the direct final rule on June 19, 2007. 72 Fed. Reg. 33694 (June 19, 2007.)

December 2007 Action. On December 5, 2007, EPA adopted a rule extending its deadline to act on Tier 2 standards until December 17, 2009. 72 Fed. Reg. 68518 (Dec. 5, 2007.) EPA stated that deferring Tier 2 standards will allow EPA to "obtain more information on implementing advanced technologies. Toward that end, we are publishing an Advance Notice of Proposed Rulemaking . . . in which we describe the new information and our current thinking with regard to potential new requirements for Category 3 marine diesel engines." *Id.* at pp. 68519-68520.

EPA disagreed with public comments it received which objected that EPA had not met mandatory duty to set initial standards required under Section 213. Rather, EPA concluded that the "February 2003 final rule fulfilled our statutory obligation under Clean Air Act section 213 to set standards for Category 3 marine diesel engines." *Id.* at 68522.

11

EPA also stated that it has "an additional obligation to periodically revise the emission standards . . ." *Id.*

In response to public comment that EPA should regulate foreign flagged vessels, EPA stated it "will be taking these concerns into account as we pursue a decision on this issue . . ." *Id.* Although EPA stated it was not deferring to Annex VI process, it did state "we are pursuing an approach in which harmonized U.S. and global standards would be developed in parallel." *Id.* at p. 68522. The Advanced Notice of Proposed Rulemaking "is the next step . . ." *Id.*

Advanced Notice of Proposed Rulemaking – (2007). On December 7, 2007, EPA published the Advanced Notice of Proposed Rulemaking. 72 Fed. Reg. 69522, (Dec. 7, 2007.) EPA generally identified "Programs Under Consideration," see e.g. *id.* at 69525-89526, but EPA did not propose any particular standard for any program. On foreign flagged vessels, EPA stated "we will continue to evaluate this issue as we develop the proposal for this rule." *Id.* at p. 69544.

Under section 213(b) of the Clean Air Act, EPA is specifically required to consider "cost of compliance" of the new technologies being considered. On issue of "Potential Costs," however, the Advanced Notice of Proposed Rulemaking offered only two paragraphs of discussion. Rather than offering any new cost analysis, EPA referred to the "draft Regulatory Impact Analysis for the May 29, 2002 proposed rulemaking for Category 3 marine vessel engines. To estimate costs of this prospective emissions control program, we expect to start with cost estimates that were developed as part of that regulatory analysis." *Id.* at p. 69550, emphasis added. EPA apparently had has not revisited this key issue since 2002.

12

### Standard of Review.

EPA has brought two challenges to Plaintiffs' complaints. First, EPA brought a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c), challenging the complaints of Friends of the Earth and South Coast Air Quality Management District. Second, EPA moves to dismiss Santa Barbara County Air Pollution Control District's complaint pursuant to FRCP 12(b)(1) and 12(b)(6). As EPA asserts, the standard of review for a motion for judgment on the pleadings is essentially the same as the standard of review for a motion to dismiss. Defs.' Motion to Dismiss at 9; *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 46-47 (D.D.C. 2005). In either case, the court must "construe the complaint in the light most favorable to the non-moving party," and must assume that all factual allegations set forth in the complaint are true. *Id.* at 47. A court may not grant judgment on the pleadings or a motion to dismiss under FRCP 12(b)(6) unless "it appears beyond doubt, based on allegations contained in the complaint, that 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

EPA further argues that Plaintiffs must allege an applicable waiver of the United States' sovereign immunity in order to meet their burden of demonstrating that this Court has subject matter jurisdiction. Defs.' Motion to Dismiss at 10. In particular, EPA appears to argue that, "if there is any doubt about whether the duties alleged of EPA are 'not discretionary,'" the court must find that the United States has not waived its sovereign immunity to suit. *Id.* This assertion is incorrect. In enacting Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, Congress waived the United States' sovereign immunity in *any* action brought against a federal agency seeking relief

other than money damages. *Trudeau v. Federal Trade Commission*, 456 F.3d 178, 186 (D.C.Cir. 2006); *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57-58 (1st Cir. 2007). This waiver applies regardless of whether the agency action is challenged under the APA, and regardless of whether the action constitutes a "final agency action." *Trudeau*, 456 F.3d 186-87; *see also Commonwealth of Puerto Rico*, 490 F.3d 57-58. Thus, whether or not the Court determines that the EPA's duty to act in this case was "not discretionary," Section 702 of the APA waives the United States' sovereign immunity to suit.

EPA cites to *United States Department of Energy ("DOE") v. Ohio*, 503 U.S. 607 (1992), for the proposition that "if there is any doubt about whether the duties alleged of EPA are 'not discretionary,' those terms must be interpreted in favor of the government's immunity." Defs. Motion to Dismiss at 10. However, *DOE* holds no such thing. In that case, the plaintiffs sought punitive fines—i.e., money damages—against the United States under the citizen suit provisions of the Clean Water Act and the Resource Conservation and Recovery Act. *Id.* at 612. The Court held that the citizen suit provisions of these acts did not provide a clear and unequivocal waiver of sovereign immunity with respect to the imposition of fines against the government (although it did authorize other remedies). *Id.* at 619-20. Here, Plaintiffs do not seek money damages from the United States, and thus their action falls squarely under the general waiver of sovereign immunity stated in APA section 702.

14

### Argument

I.    **This Is A Citizens' Suit Filed Pursuant To Section 304 Of The Clean Air Act, 42 U.S.C. Section 7604.**

Pursuant to section 304 of the Clean Air Act, a civil action may be maintained against the Administrator of EPA by any person where there is a failure on the part of the Administrator "to perform any act or duty under this Act which is not discretionary with the Administrator . . ." 42 U.S.C. § 7604(a)(2). The Clean Air Act requires EPA to regulate nonroad engines for which a significance finding has been made, and such rules are to be promulgated no later than November 15, 1992. CAA § 213(a)(3); 42 U.S.C. § 7547(a)(3). In 1994, EPA made the Section 213 significance finding regarding which nonroad engines must be regulated and this included the finding for regulation of marine vessels. 59 Fed. Reg. 31306, 31307.

In 2003, EPA adopted a regulation committing EPA to adopt Tier 2 standards by April 27, 2007, which is set forth in 40 C.F.R. § 94.8(a)(2)(ii). A regulatory deadline EPA establishes for itself to complete a rulemaking is an enforceable commitment and constitutes a duty of the Administrator under the Clean Air Act that is not discretionary and is independently enforceable pursuant to Clean Air Act § 304(a)(2), 42 U.S.C. § 7604(a)(2). *Sierra Club v. Leavitt* 355 F.Supp.2d 544, 557 (D.D.C. 2005).

Therefore, this case is properly filed in this Court pursuant to Section 304 of the Clean Air Act for EPA's failure to perform any act or duty under the Act which is not discretionary. Therefore jurisdiction is proper.

II.     **EPA's Adoption of Its "Do-Nothing" 2007 Rule Does Not Deprive This Court Of Jurisdiction Under § 304 Because That Rule Did Not Constitute "Final Action."**

EPA maintains in its motion to dismiss that it no longer has a duty to act by April 27, 2007 because EPA adopted a rule extending that deadline to December 19, 2009. EPA further maintains that if the Air Districts wish to challenge the content of that rule, review is only available in the D.C. Circuit Court. Defs.' Motion at 13. By adopting its "do-nothing" rule in 2007, EPA is blatantly attempting to circumvent the jurisdiction of this Court and the requirements of Section 304 of the Clean Air Act. Indeed, by adopting the do-nothing rule, EPA attempts to manufacture its preferred jurisdiction under Section 307 in an effort to avoid timely judicial review in this Court. This attempt must fail because EPA has not taken "final action" as required to invoke the appellate jurisdiction of Section 307.

A.     **This Court Should Exercise Prudential Considerations When Determining if EPA Has Taken Final Action.**

When determining if an administrative agency has taken final action, a court should look at the rationale and essence of EPA's regulation to see if final action subject to review under Section 307 has occurred. As stated in *NRDC v. Administrator* 909 F.2d at 985, "it is the effect of the action and not its label that must be considered." *Id.*, quoting *Abramowitz v. EPA* 832 F.2d at 1075.

As explained by Judge Wald in *NRDC v. Administrator, supra*, the boundary lines between jurisdiction under Sections 304 and 307 have been blurred and a court often must weigh prudential considerations in making jurisdictional determinations.

16

Admittedly, the boundary lines between §§ 304 and 307 jurisdiction have been blurred by judicial rulings responding to an infinite variety of factual scenarios so that now a "sizeable" overlap has developed between these provisions. 1 W. Rodgers, *supra*, at 225 (citing cases). Inevitably, then, prudential considerations often weigh into jurisdictional determinations. Claims alleging that EPA has not taken mandated action and requesting judicial intervention to order an agency decision are by common consensus better handled by the district court. *Indiana & Michigan Electric*, 733 F.2d at 491 (suggesting that suits 'asking that the EPA be ordered to act' fall under rubric of § 304); D. Currie, *Air Pollution: Federal Law and Analysis* § 9.11 (1981) (§ 304 'properly provides a remedy for the failure of the Administrator to act at all, and its existence is a persuasive reason for declining to hold mere inaction 'final action' under . . . § 307').

*NRDC v. Administrator*, 909 F.2d at 985.

Therefore, it is appropriate for this Court to determine if prudential considerations warrant review of this case under Section 304 or 307.

**B.      EPA Has Not Taken Final Action Because It Is Still Engaged In Rulemaking.**

Criteria for determining if EPA has taken final action include whether EPA is still engaged in rulemaking, such as would be indicated by the publication of an Advanced Notice of Proposed Rulemaking ("ANPR"). On this point, Judge Wald in *NRDC v. Administrator, supra* stated:

17

While EPA's dishearteningly slow pace has not yet produced even

a proposed visibility standard, but only an inconclusive ANPR, <u>the</u>

<u>Administrator remains technically engaged in at least the foreplay of formal</u>

rulemaking. NRDC's complaint about EPA's response to the evidence on

particulates as a source of visibility impairment concerns the agency's gait, not

the outcome of its rulemaking. Without a more definite determination by the

Administrator as to how or whether he will act further on the visibility issue, it

is impossible for us to conclude that he has taken "final action." <u>The agency's</u>

<u>use of the term "Final Rule" to explain its rationale for publishing an ANPR</u>

<u>and for deferring a fine particle standard is not sufficient in itself to</u>

<u>demonstrate that EPA has taken final action on the subject when the gist of the</u>

<u>ANPR indicates just the opposite; "it is the effect of the action and not its</u>

<u>label that must be considered."</u> *Abramowitz v. EPA*, 832 F.2d at 1075 (finding

EPA action to be "final" despite agency claims to the contrary) (citing

*Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 64 L. Ed. 2d 525, 100 S. Ct.

1889 (1980)).

*NRDC* at p. 986, emphasis added.[6]

Obviously, in the case at bar, EPA is still engaged in rulemaking, as indicated by

the Advanced Notice of Proposed Rulemaking published on December 7, 2007.  72 Fed.

---

[3] If EPA had taken "final action" under the *NRDC v. Administrator* criteria, then review might be appropriate under § 307(b)(2) in the Court of Appeal.  However, as noted in *Sierra Club v. Leavitt* 355 F.Supp.2d at 555, § 307(b)(2) applies to "nondiscretionary statutory duties. "  EPA's duty to regulate marine vessels is imposed by § 213, but only applies after EPA makes the finding of significance under § 213(a)(3).  In any event, the language of Section 307(b)(2) is permissive, i.e., – "any person <u>may</u> challenge the deferral . . ." (emphasis added) and the Air Districts note that EPA's motion to dismiss is not based on §307(b)(2).

Reg. 69522. Therefore, applying this criterion, jurisdiction under Section 307 is not proper and review under Section 304 is appropriate.

        C.    **The Lack Of A Well Developed Administrative Record For the December 2007 Rule Demonstrates EPA Has Not Taken Final Action.**

Final action appropriate for appellate court review can be indicated where a complete and thorough record has been compiled by EPA. Indeed, absent such a record, review by the court of appeal is not preferred. Again, as Judge Wald in *NRDC v. Administrator, supra*:

> Requests for the affirmance of standards or the vacation of EPA decisions, based on a well-developed administrative record, are, on the other hand, more properly brought in the court of appeals. *Indiana & Michigan Electric*, 733 F.2d at 490; D. Currie, Air Pollution §§ 9.10-11 (§ 307 provides for review of administrative action, rather than for prepromulgation review).

*NRDC v. EPA* at 985.

This same point was also made in *Save the Bay, Inc. v. Administrator* 556 F.2d 1282, 1292 (5th Cir. 1977), where the court observed "When Congress has vested this court with original review, it generally has done so in relation to an administrative process that more easily lends itself to production of a reviewable record."

The administrative record for the December 2007 Rule is almost embarrassing for EPA. Indeed, EPA has only 23 documents shown on its website for this rulemaking

action.[7]  And of the documents in the record, the majority of these are comment letters

from people such as the plaintiffs in this action, objecting to EPA's proposal to give itself

more time to promulgate standards under Section 213 for Category 3 marine vessels.

Since EPA is still actively engaged in rulemaking, has published a Advanced

Notice of Proposed Rulemaking, and has yet to develop a complete and thorough

administrative record to support its decision to defer action on adopting standards under

Section 213, prudential considerations weigh in favor of review by a district court under

Section 304.


### III.     EPA Has Failed To Meet Its Mandatory Duty Under Section 213.

As discussed infra, Section 213 requires EPA to adopt a rule to "achieve greatest

of emissions reduction achievable through application of technology that [EPA]

determines to be available." Clean Air Act § 213(a), 42 U.S.C. 7547(a).  The thrust of

the Air Districts case is that EPA did not fulfill its duty under Section 213 to adopt

technology forcing standards when it deferred adoption of Tier 2 standards in the 2003

Rule.  EPA now asserts, however, that "the Tier 2 rule would be issued under EPA's

discretionary authority to 'from time to time revise' the Tier 1 regulations . . ." Defs.'

Motion to Dismiss at 12 and see December 2007 Rule, 72 Fed. Reg. at 68522.  EPA's

position is wrong.

First, it must be recognized that D.C. Circuit consistently has construed section

213 as "a technology-forcing standard." *Husqvarna AB v. EPA*, 254 F.3d 195, 201

(D.C. Cir. 2001).  Indeed, Section 213 directs EPA to promulgate standards reflecting the

---

[7]  The Air Districts request judicial notice of the official EPA docket for the December 2007 Rule,
Docket No. EPA-HQ-OAR-2007-0120 at http://www.regulations.gov/search/index.jsp.

"greatest degree of emission reduction achievable through the application of technology which the Administrator determines <u>will be</u> available". 42 U.S.C. § 7547(a) (3) (emphasis added.)  Additionally, as long ago as 1980, the D.C. Circuit stated: "Congress intended the agency to project future advances in pollution control capability. It was 'expected to press for development and application of improved technology rather than be limited by that which exists today.' " *NRDC v. EPA*, 655 F.2d 318, 328 (D.C. Cir. 1981) (quoting S. Rep. No. 91-1196, at 24 (1970)), *and see Husqvarna AB* 254 F.3d at 201.

EPA now attempts to rewrite history and escape its obligation by suggesting that in 2003 EPA really did adopt technology forcing regulations rather than just the interim Tier 1 standards "manufacturers are generally already meeting" and which required "no additional development, design, or testing beyond what manufacturers are already doing to meet the Annex VI . . . standards." *Bluewater Network v. EPA* 372 F.3d 404, 408-409 (D.C. Cir. 2004), quoting 68 Fed. Reg. at 9761.  Indeed, in the Advanced Notice of Proposed Rulemaking, EPA pointed out that "as early as the 1997 [Annex VI] conference, many countries 'already recognized that the NO[X] emission limits established in [Annex VI emissions control program] were very modest when compared with current technology developments." 72 Fed. Reg. 69522, 69536.

EPA's contention must also be rejected especially in light of the Court of Appeals clear statement that it was upholding EPA's two tiered approach because "<u>perhaps most importantly</u>, the EPA has committed to incorporating the new technologies into stricter emissions standards in the 2007 rulemaking." *Bluewater Network* 372 F.2d at 412, emphasis added.  The interim standards did not meet EPA's initial duty to act under

Section 213 and it cannot now legitimately claim to be exercising its discretion to "from time to time" revise the standard under Section 213(a)(3).

IV.   **EPA Has A Mandatory Duty To Determine If It Has Jurisdiction Over Foreign-Flagged Vessels.**

Under Section 213, EPA has a nondiscretionary duty to regulate all nonroad engines subject to its 1994 significance finding, including marine vessels.  See 59 Fed. Reg. at 31307.  Indeed, the *Nonroad Engine and Vehicle Emission Study- Report* (1991) specifically includes "Commercial Marine Vessels."  *Id.* at 4, available at www.epa.gov/otaq/regs/nonroad/nrstudy.pdf.  Nowhere has EPA identified evidence that suggests that when the Study was completed or the 1994 finding was made that foreign flagged vessels were not included.  EPA has a duty to regulate all nonroad engines subject to its determination of significance, including all marine vessels, unless EPA can demonstrate it does not have the legal authority to do so.

EPA cannot claim that foreign flagged vessels are not part of the problem.  EPA acknowledged in Advanced Notice of Proposed Rulemaking that in 1999, "according to U.S. Maritime Administration data, about 90 percent of annual entrances to U.S. ports were made by foreign-flagged vessels (75,700 total entrances; 67,500 entrances by foreign vessels; entrances are for vessels engaged in foreign trade and do not include Jones Act vessels)."  72 Fed. Reg. at 69536.  Additionally, "MARAD data from 2005 indicates that while about 4.7 percent of all ocean-going vessels are owned by citizens of the United States (5[th] largest fleet) only about 1.9 percent of all ocean-going vessels are flagged here.  According to that data, while Greece, Japan, China and Germany account

22

for the largest fleets in terms of ownership (15.3, 13.0, 11, and 8.9, respectively), Panama and Liberia account for the largest fleets by flag (21.6 and 9.8, respectively)." *Id.*

Under the schedule set by Congress in Section 213, EPA was to adopt regulations for all nonroad engines, including marine vessels, some 15 years ago. It has been 9 years since EPA was first sued for failing to regulate marine vessels and 5 years since EPA promulgated the 2003 Rule which set interim Tier 1 standards. And yet, EPA still has not determined if it has jurisdiction over 90 percent of the ocean-going vessels visiting U.S. ports.

EPA's comments on this issue barely show any interest. In adopting the December 2007 Rule, EPA stated about foreign-flagged vessels that EPA would "be taking these concerns into account as we pursue a decision on this issue . . ." 72 Fed. Reg. at 68522. In the Advanced Notice of Proposed Rulemaking, EPA stated it would "continue to evaluate this issue as we develop the proposal for this rule." 72 Fed. Reg. at 96544.

EPA does not need more time to develop information on available technology or costs to determine its own jurisdiction. This is a legal issue. Further, once EPA determines this issue, even if the Air Districts disagree with the decision made, at least EPA will have made a decision. The Air Districts and other parties would then be free to seek redress in the courts and, if that were not successful, legislative amendments to the Clean Air Act could be considered. EPA's failure to make a determination of its own jurisdiction shirks its mandatory responsibilities under Section 213 of the Clean Air Act and is, therefore, subject to review in this Court under Section 304.

V.      **EPA May Not Delay Regulation In Deference To Pending Negotiations On Amendments To Annex VI.**

EPA may not rely on ongoing negotiations regarding amendments to the Annex VI treaty as a basis to defer regulation under Section 213. As recently held by the Supreme Court, EPA's "reasons for action or inaction must conform to the authorizing statute." *Massachusetts v. EPA* 127 S.Ct. 1438, 1462, 167 L.Ed.2d 248, 277, – U.S. – (2007). In particular, the Supreme Court found that EPA's nonstatutory reasons for inaction for regulating greenhouse gases improper, including EPA's concern that "regulating greenhouse gases might impair the President's ability to negotiate with 'key developing nations' to reduce emissions." *Id.* 127 S.Ct. at 1463, 167 L.Ed.2d at 277.

Nothing in Section 213 suggests EPA may delay regulation in order to negotiate international treaties. Rather, Section 213 mandates that standards must "take effect at the earliest possible date considering the lead time necessary to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period and energy and safety." 42 U.S.C. § 7547(b). While some discretion is certainly allowed under the statute in the development of standards for Category 3 marine vessels, negotiations of international emissions standards is a criterion "divorced from the statutory text." *Massachusetts v. EPA supra*, 127 S.Ct. at 1462, 167 L.Ed.2d at 277. Therefore, it is an improper basis for delay.

VI.     **The APA Claim Is Proper As An Alternative Pleading.**

EPA next argues that the Air Districts' cause of action pursuant to the APA, 5 U.S.C. §§ 701 et seq., is improper. In particular, they argue that the availability of a

citizen suit pursuant to Clean Air Act section 304, 42 U.S.C. § 7604, precludes any reliance on the APA as an alternative cause of action. EPA is incorrect. Nothing in the statutes or cases cited by EPA precludes the Air Districts from pleading, in the alternative, a right of action under both the Clean Air Act section 304 and the APA.

Several courts have recognized and upheld such alternative pleading. In *Conservation Law Foundation v. Busey*, 79 F.3d 1250 (1st Cir. 1996), the First Circuit analyzed, first, whether the district court had jurisdiction over plaintiffs' claims under Section 304 of the Clean Air Act. *Id.* at 1261. Concluding that it did not, the court went on to analyze whether the district court nonetheless had jurisdiction under the APA, and found that it did. *Id.* The court rejected the argument that the APA was not available in that case because Congress has specifically provided an enforcement mechanism in Section 304 of the Clean Air Act. *Id.* The court noted that "[t]he central purpose of the APA is to 'provid[e] a broad spectrum of judicial review of agency action.'" *Id.* (citing *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). "[A]bsent some clear and convincing evidence" that Congress intended to preclude review, a cause of action is available under the APA. *Id.* (citing *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230 (1986).). The citizen suit provision of the Clean Air Act does not contain any such "clear and convincing evidence" of preclusion. In fact, section 304 contains a savings clause, preserving "any right which any person . . . may have under any statute . . . to seek . . . any other relief." *See* 42 U.S.C. § 7604(e); *Conservation Law Foundation*, 79 F.3d at 1261. Because section 304 does not prohibit review of an agency's action by other means, the Court held, the plaintiffs could rely on the APA to

25

obtain judicial review of agency action when review was not available under Clean Air Act section 304. *Id.*[8]

In reaching this conclusion, the First Circuit also rejected the argument, made by EPA here, that *Middlesex County Sewerage Authority v. National Sea Clammers Association* requires a contrary conclusion. *Id.* at 1261. In *National Sea Clammers*, the issue was whether Congress's establishment of a comprehensive enforcement mechanism in one statute precluded an interpretation of another statute as creating an alternative, implied right of action. *Id.* EPA argued by analogy that the express right of action in Clean Air Act section 304 precluded an interpretation of the APA as providing an alternative, implied right of action. However, the court deemed this reliance on *National Sea Clammers* "misplaced," because the APA contains an express right of action; no right of action need be implied for a plaintiff to pursue a claim under the APA. *Id.* Moreover, "cases decided after *Sea Clammers* have expressly recognized that the APA provides a right of review of agency decisions precisely where a plaintiff's claim is not covered by the citizen suit provision of the substantive act." *Id.* (citing *Oregon Natural Resources Council v. United States Forest Service*, 834 F.2d 842, 851 (9th Cir. 1987); *Allegheny County Sanitary Auth. v. United States Envt'l Protection Agency*, 732 F.2d 1167, 1177 (3d Cir. 1984); *Envt'l Defense Fund v. Tidwell*, 837 F.Supp. 1344, 1355-57 (E.D.N.C. 1992).).

EPA's citation to *Bowen v. Massachusetts* is similarly unavailing. Defs.' Motion to Dismiss at 15. In that case, the Supreme Court concluded that the plaintiffs had

---

[8] The First Circuit noted, as EPA does here (Defs.' Motion to Dismiss at 15, n.7), that Clean Air Act section 307(d)(1), 42 U.S.C. § 7607(d)(1), does preclude review of agency actions listed in that section by means of APA section 706. *Conservation Law Foundation*, 79 F.3d at 1261. However, as argued above Section II, EPA's action does not constitute a "final action" under section 307. Therefore, section 307(d)(1) does not preclude agency review under the APA.

properly brought their suit under the APA in federal district court even though an alternative remedy was available in the Court of Claims because the Court of Claims could not grant the remedies sought by plaintiffs. *Bowen v. Massachusetts*, 487 U.S. 879, 907, 908 (1988). While the *Bowen* Court recognized that APA section 704 "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," the Court immediately cautioned that this section "should not be construed to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." *Id*. at 903.

This Court has also recognized the appropriateness of alleging causes of action under both the APA and substantive citizen suit provisions. In *Biodiversity Legal Foundation v. Norton*, 285 F.Supp.2d 1 (D.D.C. 2003), the plaintiff brought suit under the citizen suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g), and sections 555(b) and 706(1) of the APA. *Id*. at 7. This Court noted that these two statutes "provide access to the courts for different purposes." *Id*. The ESA citizen suit provision, like that in the Clean Air Act, permits plaintiffs to enforce a "clearly-mandated, nondiscretionary duty." *Id*. Where a failure to act in a timely manner is alleged under the ESA, the plaintiff must show a "clear-cut nondiscretionary duty" to take action by a "date-certain deadline." *Id*. In contrast, the APA provides a cause of action for any agency action that fails to comply with the agency's general "general duty of timeliness." *Id*. at 7-8. This difference in scope and purpose between Clean Air Act section 304 and APA section 706 indicates that the Air Districts' claims under both statutes are not simply duplicative, as EPA suggests.

Finally, EPA makes the following two arguments: (1) Plaintiffs cannot simultaneously allege that EPA has withheld an action (under 5 U.S.C. § 706(1)) and taken an action that is arbitrary, capricious, an abuse of discretion, or otherwise unlawful (under 5 U.S.C. § 706(2)(A)); and (2) Plaintiffs' claim under 5 U.S.C. § 706(2)(A) fails to state a claim on which this court can grant relief. Because the Air Districts have not alleged any cause of action under APA section 706(2)(A), these arguments are irrelevant to their complaints. The Air Districts have only challenged EPA's failure to act under APA section 706(1).

### Conclusion

For the reasons stated herein, the Air Districts respectfully request that this Court deny EPA's motion for judgment on the pleadings and motion to dismiss.

Date:   February 22, 2008            Respectfully Submitted,

SANTA BARBARA COUNTY AIR POLLUTION
CONTROL DISTRICT

William M. Dillon,
Senior Deputy County Counsel,
*Pro Hac Vice*
Office of the County Counsel
Santa Barbara County
105 E. Anapamu St. Suite 201
Santa Barbara, CA. 93101
(805) 568-2950
(805) 568-2983 (fax)
wdillon@co.santa-barbara.ca.us

28

_(signature)_

Justin Keating (DC Bar #475602)
Beins, Axelrod, P.C.
1625 Massachusetts Ave, NW Suite 500
Washington DC 20036
202.328.7222
FAX 202.328.7030
jaxelrod@beinsaxelrod.com
jkeating@beinsaxelrod.com

SOUTH COAST AIR QUALITY
MANAGEMENT DISTRICT
KURT R. WIESE, District Counsel
BARBARA BAIRD, Principal Deputy District
Counsel

_(signature)_

Barbara B. Baird
_Pro Hac Vice_
Attorney for Plaintiff
South Coast Air Quality Management District
21865 Copley Drive
Diamond Bar, CA 91765
(909) 396-2302; bbaird@aqmd.gov

29

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FRIENDS OF THE EARTH, SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, AND SANTA BARBARA COUNTY AIR POLLUTION CONTROL DISTRICT | ) ) ) ) ) | Civ. Case No. 07-1572 (consolidated with 07-1744) (consolidated with 07-2319) |
| Plaintiffs, | ) ) | Judge Rosemary M. Collyer |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | |
| Defendants | ) ) ) | |

## ORDER

It is hereby ORDERED that Defendant EPA's Motion to Dismiss is DENIED.

_____
Rosemary M. Collyer
United States District Judge